Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,
and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER CREDIT COUNSELING FOUNDATION, INC., a Florida corporation, ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive, <br><br> Defendants. | **CLASS ACTION COMPLAINT** <br><br> No. |

Plaintiff Kelly Pinn ("Pinn" or "Plaintiff") bring this class action complaint against Defendants Consumer Credit Counseling Foundation, Inc., Ishwinder Judge, and Does 1 to 10 (hereinafter jointly referred to as "Defendants") to stop Defendants' practice of making unsolicited telemarketing calls to telephone numbers listed on the national Do-No-Call Registry, using false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**Nature of the Case**

1. Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, "spoofed" telemarketing calls made by or on behalf of Defendants which deceptively market Defendants' services.

2.      Plaintiff, individually, and for class members, seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

**Parties**

3.      Plaintiff Kelly Pinn is a resident of the United States. She is the subscriber of a residential telephone listed on the national Do Not Call list consistent with, on which she received numerous unsolicited telephone calls from Defendants.

4.      Defendant Consumer Credit Counseling Foundation, Inc. ("CCCF") is registered as a Florida corporation with the California Secretary of State as having an office in Livermore, California. A true and correct copy of this registration is attached to this Complaint as Exhibit 1. A true and correct excerpt of CCCF's most recent IRS Form 990 is attached as Exhibit 2.

5.      Defendant Ishwinder Judge ("Judge") is CCCF's Chief Executive Officer, Secretary, and Chief Financial Officer. There is no evidence in the record from CCCF's most recent registration with the California Secretary of State or CCCF's publicly-available IRS Form 990 that CCCF has any employees besides Judge. On information and belief, Judge is CCCF's sole owner, officer, and employee.

6.      Hence, all CCCF's conduct alleged herein is necessarily controlled, carried out by, and/or attributable to Judge. Judge had direct, personal participation in or personally authorized the TCPA violations alleged herein, and was the guiding spirit and central figure behind CCCF's telemarketing practices which violated the TCPA. On information and belief Judge knew which telemarketers CCCF used, was personally involved in the management of those telemarketers, and knew that these telemarketers were making telephone calls to secure more customers for CCCF, and knew that CCCF's telemarketing practices violated the TCPA.

7.      Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been

ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiffs.

8. Plaintiffs are informed and believe, and based thereon allege, that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

9. All Defendants, including CCCF, Judge, and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of CCCF, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

10. The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

11. This Court has personal jurisdiction over the Defendants under California Code of Civil Procedure section 410.10 because many of the acts alleged herein were committed and injury was incurred in California, because they conduct operations and/or sales in California, are registered to do business in California, and the acts alleged herein originated in or were directed to this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claim occurred in this District.

//

## Common Allegations

### The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

13.  "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

14.  In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

15.  The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).[1] The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

16.  The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

---

[1] Both the Caller and the Advisor may be liable under the TCPA. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

17. The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by CCCF are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes").

18. The situation has greatly worsened since the TCPA was first passed. In 2018, the House of Representatives received testimony that "approximately 40% of all calls on the landline network are unwanted robocalls," and that "the number of identified scam calls [is expected] to rise . . . to as high as 15% or 16% [.]" Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 1 (testimony of Aaron Foss), https://energycommerce.house.gov/sites/ democrats.energycommerce.house.gov/files/documents/Testimony-Garr-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27.pdf; Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 11 (testimony of Scott Hambuchen), https://energycommerce.house.gov/sites/ democrats.energycommerce.house.gov/files/documents/Testimony-Hambuchen-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27_1.pdf. Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

**CCCF's Debt Counseling Business**

19. CCCF operates as a not-for-profit company under 26 U.S.C. § 501(c)(3), and offers credit counseling services and debt management plans. CCCF's non-profit status is a significant competitive advantage that is essential for Defendants operating CCCF's business, offering its credit counseling services and debt management plans as they have.

20. CCCF's business may be subject to the federal Credit Repair Organizations Act (15 U.S.C. §§ 1679-1679j, "CROA"), California's Credit Repair Services Act (Cal. Civ. Code §§ 1789.10-26, "CRSA"), and/or California's Fair Debt Settlement Practices Act (Cal. Civ. Code §§ 1788.300-07, "FDSPA"). CROA regulates businesses offering to "improv[e] any consumer's credit record, credit history, or credit rating" or related services, and in particular prohibits any payments to these businesses "before such service is fully performed." 15 U.S.C. §§ 1679a(3)(A), 1679b(b). CRSA likewise regulates businesses offering to "[i]mproving a buyer's credit record, history, or rating" or "[o]btain[] a loan or other extension of credit for a buyer," and prohibits payments to these business "prior to full and complete performance of the services" they "agreed to perform for or on behalf of the buyer." Cal. Civ. Code §§ 1789.12(a), 1789.13(a). Finally, FDSPA regulates businesses "[p]roviding advice . . . to obtain a settlement for less than the full amount of [a] debt" or assisting "a consumer to accumulate funds in an account for future payment of a reduced amount of debt to one or more of the consumer's creditors." Cal. Civ. Code §§ 1788.301(a), (b), 1788.302.

21. However, each law (and other related laws in other states) exempts non-profit organizations operating under 26 U.S.C. § 501(c)(3) from its regulations. 15 U.S.C. § 1679a(3)(B); Cal. Civ. Code §§ 1788.304(b), 1789.12(b)(7). Credit counseling services' non-profit status is also material to their relationships with large creditors:

> A second source of credit counseling standards lies . . . with the large creditors, such as banks and credit card operating companies, which interact with CCAs on a regular basis. Large creditors often support [credit counseling services] by providing them with a percentage of the payments made by the debtors that the [credit counseling services] counsel. Often referred to as ''fair share,'' these payments are intended to reimburse some operating costs in exchange for the CCAs' positive work in helping debtors repay their debts. Many of the largest creditors have developed standards to determine which CCAs are eligible to receive fair share payments.

S. Rep. No. 109-55, at 34 (2005). Such "fair share" standards often include whether or not a credit counseling services is a not-for-profit organization. *Id*. at 37-38. When the IRS has previously conducted campaigns to root out credit counseling services abusing their non-profit status, it "has identified individuals and businesses that are involved in a scheme to create [counseling services] as a front for related for-profit businesses." *Id*. at 42. On information and belief, Defendants use CCCF's non-profit status to facilitate their credit counseling business in the manner alleged above. On information and belief (especially including public records showing that CCCF has no other employees besides Judge), Pinn alleges Defendant Doe 1 is a for-profit business closely related to CCCF, also operating in California.

**Defendants' Illegal Telemarketing Calls**

22.  Defendants use illegal telemarketing campaigns to promote CCCF's business as a debt counseling service. Defendants use CCCF's non-profit status to facilitate their credit counseling business in the manner alleged above. CCCF uses telemarketers to solicit business from potential consumers across the country, including in California, to purchase its products and services through aggressive, outbound telemarketing campaigns.

23.  These telemarketing campaigns are conducted for CCCF's benefit and on its behalf. CCCF and its telemarketers initiate telemarketing calls from offshore call centers to telephone numbers on the Do-Not-Call registry, assess the recipient's need and/or interest in CCCF's services, then transfer the recipients to an onshore call center operated by CCCF's actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers (such as Doe 1) to enroll customers in CCCF's debt counseling services and debt management plans. On information and belief, Defendants have granted CCCF's telemarketers access to its sales and enrollment systems, and therefore granted them CCCF's apparent authority.

24.  CCCF and the other Defendants systemically fail to honor the national Do Not Call List. CCCF and the other Defendants do not have express consent to call telephone users whose telephone number is on the Do Not Call List.

25.  Defendants also use misleading or inaccurate caller identification information, including "spoofed" telephone numbers, to entice recipients to answer their telephone calls. This

spoofing means call recipients are only able to avoid Defendants' unwanted calls by risking that they miss *wanted* calls.

26. Nonetheless, Defendants made, and continues to make, these telemarketing calls to individuals nationwide without their consent. Defendants ratify the telemarketers' conduct by accepting payments from the consumers who enroll in CCCF's credit counseling services at the end of the telemarketers' call, and paying commission to these telemarketers, despite knowing that the calls resulting in the enrollment violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing calls, and paid and/or approved payment of commissions to telemarketers for such calls.

27. To the extent CCCF used any third-party telemarketers to make any calls to Plaintiffs or members of the Classes and Subclass, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of CCCF, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of CCCF.

28. Defendants operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to CCCF's telemarketers). Defendants are legally responsible for ensuring it and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions.

29. There is no material distinction between telemarketing calls made by Defendants and/or by call centers who are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013,

when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

**Plaintiff's Individual Allegations**

30. In April 2022, Pinn received multiple unsolicited and unauthorized telemarketing calls from the same telephone number. This number was spoofed, and in fact belonged to a restaurant in Tennessee—which reported receiving roughly fifty (50) calls from all over the country, concerning telemarketing like the April 2022 calls to Pinn.

31. Pinn ultimately answered the last of these calls. The caller initially indicated he was calling from "Credit Associates," and asked about Pinn's financial situation. Within a few minutes, the caller attempted to transfer Pinn to a third party (identified as his advisor) but Pinn and the caller spent roughly ten minutes on hold, while various automated voices and sounds played (including music, ringing, voices stating that the call "may be recorded for quality assurance purposes"). Eventually, the caller connected Pinn to the advisor. The advisor said she was from CCCF, and provided an email address and telephone number which are linked to CCCF. (On information and belief, the advisor's employer, if any, is Doe 1). Pinn told the advisor she would call CCCF back if she was interested, and ended the call.

32. Pinn's telephone number has been registered with the National Do-Not-Call Registry for over ten years. Pinn uses this telephone number uses residential purposes. Pinn never provided her telephone number to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them. Defendants and their agents did not otherwise obtain Pinn's prior express consent to make telemarketing calls to her telephone number. Pinn

was not a business associate, customer, or other person having an established relationship with CCCF, CCCF did not call to collect an existing obligation, and Pinn did not request CCCF to call (and, indeed, she was not aware of CCCF prior to these calls). CCCF never had valid consent to call Pinn. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

33. Defendants' telemarketing inflicted actual injury on Pinn by invading her privacy. Defendants caused Pinn the harm inherent in unsolicited, harassing, and deceptive telemarketing calls (including emotional distress, aggravation, nuisance, loss of use of her telephone, wasted time, invasion of privacy, and diverting attention away from her daily activities).

### Class Certification Allegations

34. **Class Definition:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class:

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of CCCF, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

35. **Numerosity:** The exact number of Class members is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. The Class is so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of the Class.

36. **Commonality:** Plaintiffs and the Class members share common experiences receiving calls by or on behalf of CCCF. They received multiple, incessant, uninvited calls for the purposes of marketing CCCF's services to their residential telephone numbers.

37. **Predominance:** In addition, common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the class member. The predominant common questions include:

   a. Whether Defendants and/or their agents made telephone calls to members of the DNC Class whose telephone numbers were registered with the national Do-Not-Call registry, and/or instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for making telemarketing calls;

   c. Whether Defendants are vicariously liable for any calls by their agents;

   d. Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiffs and Class members;

   e. Whether Plaintiffs and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and Class members are entitled to treble damages;

   f. Whether Plaintiffs and Class members are entitled to injunctive relief and attorneys' fees and costs.

38. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief they seek is common to the Class.

39. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

40. **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class

members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

41. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

42. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200 Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

43. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

44. Defendants are "persons" as defined by 47 U.S.C. § 153(39).

45. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id.*

46. The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e). The FCC regulation also provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> ….
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

47 C.F.R. § 64.1200(d). Again, this prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

47. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other Class members.

48. On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(1) and/or (2) by failing to maintain a written policy for maintaining a do-not-call list and/or informing and training all personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

49. On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller, CCCF's name, and a telephone number or address at which CCCF could be contacted. Specifically, CCCF and/or its agents use deceptive and misleading scripts (consistent with the individual allegations regarding Plaintiffs above) which fail to identify CCCF until after the telemarketer transfers the call to the onshore call center.

50. CCCF and/or its agents made more than one unsolicited telephone call to Plaintiffs and Class members within a 12-month period without their legally effective consent to receive such calls. Plaintiffs and Class members never provided any form of consent to receive telephone calls from CCCF, and CCCF does not have legally valid evidence of such consent. CCCF did not have an established business relationship with Plaintiffs and the other DNC Class members.

51. Defendants' violations are willful because Defendants knew that Plaintiffs and Class members had not given prior express consent to receive telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants called such telephone numbers. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

52. Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

53. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

WHEREFORE, Plaintiff Kelly Pinn prays that the Court enter judgment and orders in their favor and against Defendants Consumer Credit Counseling Foundation, Inc., Ishwinder Judge, and Does 1 to 10 as follows:

a. An order certifying the Class, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the Class;

b. Statutory damages as provided under 47 U.S.C. § 227(c)(5) against Defendants in favor of Plaintiffs and the Class, including trebled damages for willful and knowing violations;

c. Injunctive relief under 47 U.S.C. § 227(b)(3) against Defendants in favor of Plaintiff and the Class;

d. An award of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the Class;

e. Such other and further relief as this Court may deem appropriate.

Dated: July 11, 2022           By:   /s/Ethan Preston
                                     Ethan Preston (263295)
                                     ep@eplaw.us
                                     PRESTON LAW OFFICES
                                     4054 McKinney Avenue, Suite 310
                                     Dallas, Texas 75204
                                     Telephone: (972) 564-8340
                                     Facsimile: (866) 509-1197

                                     *Attorneys for Plaintiff Kelly Pinn, on her own behalf and behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: July 11, 2022            By:   /s/Ethan Preston
                                      Ethan Preston (263295)
                                      ep@eplaw.us
                                      PRESTON LAW OFFICES
                                      4054 McKinney Avenue, Suite 310
                                      Dallas, Texas 75204
                                      Telephone: (972) 564-8340
                                      Facsimile: (866) 509-1197

                                      *Attorneys for Plaintiff Kelly Pinn, on her own behalf and behalf of all others similarly situated*

Jury Trial Demand