Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,
and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | **PLAINTIFF KELLY PINN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | No. 4:22-cv-04048-DMR |
| v. | Judge Donna M. Ryu |
| CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive, | Date: November 10, 2022<br>Time: 1:00 p.m.<br>Location: Courtroom 4, 3rd Floor Ronald V. Dellums Federal Building & United States Courthouse 1301 Clay Street Oakland, California 94612 |
| Defendants. | |

Plaintiff Kelly Pinn ("Pinn") submits this opposition to oppose Defendants Consumer Credit Counseling Foundation, Inc. ("CCCF"), National Budget Planners of South Florida, Inc. ("NBP"), and Ishwinder Judge's (hereinafter jointly referred to as "Defendants") Motion to Dismiss (ECF No. 23) (the "Motion").

## I.    Introduction

Pinn filed her original complaint on July 11, 2022. (ECF No. 1.) The complaint alleged a single count for violations of the Do-Not-Call ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c).

On September 1, 2022, CCCF and Judge filed their first motion to dismiss. (ECF No. 13.) Under a stipulated order, Pinn filed her First Amended Complaint ("FAC") on September 27, 2022. (ECF No. 18.) Again, the FAC alleges a single count under the TCPA's DNC provisions. Defendants filed the instant Motion on September 29, 2022. (ECF No. 23.)

**Statement of Issues:** Does the TCPA's "Nonprofit Exemption" bar TCPA claims under the facts alleged by Pinn?

**Statement of Relevant Facts:** Many tax-exempt debt counseling services are, in actuality, fronts for affiliate for-profit businesses. (FAC ¶23.) These for-profit affiliates may make debt consolidation loans to facilitate the debt counseling services' debt management plans, sell "educational materials" used by the debt counseling services, and/or charge "processing" fees for distributing payments under these debt management plans. (*Id.* ¶24.)

Pinn alleges CCCF is such a front for Defendant Doe 1, a for-profit business affiliated with CCCF, and that "Doe 1's products and/or services are packaged and sold together with CCCF's debt counseling business." (*Id.* ¶25.) Pinn alleges Judge owns for-profit businesses, and he (and/or his partners) have "operate(d) for-profit businesses that sold products or services to customers who CCCF acquired via telemarketing." (*Id.* ¶26.) Pinn further alleges "Defendants use CCCF's non-profit status to facilitate Doe 1's business by acquiring customers through telemarketing, and then referring CCCF's clients to Doe 1 and/or packaging Doe 1's products or services together with CCCF's debt counseling services." (*Id.* ¶31.)

Pinn alleges she received a series of unauthorized spoofed calls to her residential

telephone number on the National Do-Not-Call Registry. (*Id.* ¶¶39, 45.) When Pinn answered

one of these calls, she was transferred to an advisor who said she was from CCCF. (*Id.* ¶¶40-41.)

> During the call, the advisor indicated that Pinn's debts would be consolidated through Defendants' program. After the call, CCCF sent an email which promoting a "Debt Management Plan Summary" under which consumer loans would be consolidated under a 5.95% interest rate (compared to a much higher interest rate without the debt management plan).

(*Id.* ¶42.) Pinn has served discovery to identify Doe 1, but has been rebuffed. (*Id.* ¶29.)

## II.    The TCPA's Non-Profit Exemption Does Not Bar Pinn's Claims

The TCPA provides that any "person who has received more than one telephone call

within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may" bring an action for injunctive relief and statutory damages

of $500 per violation. 47 U.S.C. § 227(c)(5). The FCC's TCPA regulation provides that "[n]o

person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber

who has registered his or her telephone number on" the National Do-Not-Call Registry. 47

C.F.R. § 64.1200(c)(2). *See also* 47 C.F.R. § 64.1200(e) (cellular numbers).

Conversely, however, the FCC's TCPA regulation exempts calls "[b]y or on behalf of a

tax-exempt nonprofit organization" from the definition of a "telephone solicitation." 47 C.F.R. §

64.1200(f)(15)(iii). This exclusion (which the Motion describes as the "Nonprofit Exemption") is

the crux of Defendants' Motion.

### A.    The FCC's Orders Control

When the FCC directly interpreted and construed the "Nonprofit Exemption," it

recognized concerns that the Nonprofit Exemption "frequently has been used to veil what is in

reality a commercial venture" and "'should not function as an artifice for an inherently

commercial enterprise,'" and that "calls that serve to benefit for-profit companies (in whole or in

part) are not calls by or on behalf of nonprofits and should remain subject to the TCPA's

restrictions." *In the Matter of Rules and Regulations Implementing the Telephone Consumer

Protection Act of 1991*, *2003 Report and Order*, 18 FCC Rcd. 14014, 14088 ¶127 (July 3, 2003)

at https://docs.fcc.gov/public/attachments/FCC-03-153A1.pdf ("2003 Order"). To address those

concerns, the FCC held:

> If . . . a **for-profit organization is delivering its own commercial message as part of a telemarketing campaign** (i.e., encouraging the purchase or rental of, or investment in, property, goods, or services), even if accompanied by a donation to a charitable organization or referral to a tax-exempt nonprofit organization, that call is not *by or on behalf of a tax-exempt nonprofit organization*. Such calls, whether made by a live telemarketer or using a prerecorded message, would not be entitled to exempt treatment under the TCPA. [The FCC] will not hesitate to consider enforcement action should the provider of an otherwise commercial message seek to immunize itself by simply inserting purportedly "non-commercial" content into that message. **A call to sell debt consolidation services, for example, is a commercial call regardless of whether the consumer is also referred to a tax-exempt nonprofit organization for counseling services.**

*Id*. at 14089-90 ¶128 (italics in original, bold supplied). Two years later, the FCC reiterated

> where telephone calls are initiated by a for-profit entity to offer its own … products for sale—even if a tax-exempt nonprofit will receive a portion of the sale's proceeds—such calls are telephone solicitations as defined by the TCPA. We distinguish these types of calls from those initiated, directed and controlled by a tax-exempt nonprofit for its own fundraising purposes.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *2005 Report and Order*, 20 FCC Rcd. 3788, 3800 ¶30 (Feb. 18, 2005) at https://docs.fcc.gov/public/attachments/FCC-05-28A1.pdf ("2005 Order"). Likewise, the FCC has found calls "by or on behalf of tax-exempt non-profit organizations" are also exempt from other TCPA provisions only "to the extent that they do not contain telemarketing messages . . ." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *2003 Report and Order*, 27 FCC Rcd. 1830, 1841 ¶28 (Feb. 15, 2012) at https://docs.fcc.gov/public/attachments/FCC-12-21A1.pdf ("2012 Order").

The Hobbs Act gives federal courts of appeal "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication Commission . . ." 28 U.S.C. § 2342. "The Hobbs Act, 28 U.S.C. § 2342, requires that all challenges to the validity of final orders of the FCC be brought by original petition in a court of appeals." *US West Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002) (quoted by *Pacific Bell Tel. Co. v. California Public Utilities Com'n*, 621 F.3d 836, 843 n.10 (9th Cir. 2010)). Hence, a district court has no "jurisdiction to pass on the validity of the FCC['s] regulations, and no question as to their validity can be" litigated on appeal from a district court. *Id*. (same). *See Leckler v. Cashcall, Inc.*, No. 07-04002, 2008 WL 5000528, *2-3

(N.D. Cal. Nov. 21, 2008) (court "did not have jurisdiction to review the FCC's . . . final decision[s] interpreting . . . the TCPA . . . The federal courts of appeals had exclusive jurisdiction over [] challenge to the FCC's declaratory ruling").[1] Under the Hobbs Act, district courts "are bound to follow" the "FCC's interpretation" of the TCPA. *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1099 n.5 (N.D. Cal. 2015) (following *Leckler*); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-03546, 2015 WL 7454260, *6 n.6 (N.D. Cal. Nov. 24, 2015) ("Under the Hobbs Act, [district court is] bound by an FCC final order," same).

Hence, to the extent Defendants' cases held the "Nonprofit Exemption" is a "categorical" prohibition on TCPA claims non-profit companies, they would contradict the 2003 Order and violate the Hobbs Act. (*Cf.* Def.'s Mot. at 3:17-18 (quoting *Massaro v. Beyond Meat, Inc.*, No. 20-00510, 2021 WL 948805, *6 (S.D. Cal. Mar. 12, 2021).) In fact, Defendants' cases are consistent with the 2003 Order:

> [T]he FCC regulations demonstrate that this question is not as clear cut as argued by PETA. By the plain terms of the FCC regulations, non-profits are shielded from liability under the non-profit exemption as a categorical matter *if* the nonprofit is promoting *its own* products or services. [citing 2003 Order, 18 FCC Rcd. at 14089.] While the regulations make clear that a blanket exemption exists if a non-profit is promoting its own organization, there is not the same clarity when the subject call/text involves a for-profit entity. For example, in its 2003 Report and Order, the FCC confronted complaints that the "[nonprofit exemption] frequently has been used to veil what is in reality a commercial venture." [*Id.*, at 14088 ¶ 127.] In light of this concern, the FCC issued a clarification of the non-profit exemption: "[i]f ... a for-profit organization is delivering its own commercial message as part of a telemarketing campaign (i.e., encouraging the purchase or rental of, or investment in, property, goods, or services), even if accompanied by a donation to a charitable organization or referral to a tax-exempt nonprofit organization, that call is not by or on behalf of a tax-exempt nonprofit organization." [*Id.*, at 14089 ¶ 128.] Thus, the FCC regulations shed light on the concern for the use of the non-profit exemption to conceal for what is in fact a commercial scheme.

---

[1] *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1076 (S.D. Cal. 2014) and *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1104 (C.D. Cal. 2014) also follow *Leckler*'s interpretation of the Hobbs Act. *See also Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1281-82 (D. Colo. 2013) ("practical effect of accepting plaintiff's argument here would be to 'set aside, annul, or suspend' the 2008 FCC Ruling[;] [court was] without jurisdiction to effectuate that outcome"; collecting cases); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726-27 (N.D. Ill. 2011) (rejecting arguments "that the FCC cannot have meant what it said because it is inconsistent with the TCPA," district court was "not the appropriate forum to challenge the validity of the FCC's orders"); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) (even where FCC's "interpretation does violence to the clear language of § 227 . . . under the Hobbs Act, [district court] has no jurisdiction to review the FCC's rule").

*Massaro*, 2021 WL 948805, at *6 (emphasis in original). Most of Defendants' cases do not implicate the parts of the FCC's 2003 Order at issue here either because (1) there was no for-profit business involvement whatsoever[2] or (2) the only for-profit involvement alleged was the telemarketer making calls entirely on behalf of a non-profit (and not for a for-profit business).[3]

*Bank v. CreditGuard of America*, No. 18-1311, 2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019) warrants a closer look. In *Bank*, the plaintiff alleged a telemarketing call from either a for-profit debt management service or an affiliated non-profit debt counseling service, which referred customers between them. *Id.* at *1-3. *Bank* held the Nonprofit Exemption was "inapplicable to the [for-profit defendant] because the Telemarketing Call was made with dual commercial and non-commercial purposes." *Id.* at *7 (citing 2003 Order). The Telemarketing Call was "precisely the type of call that the FCC [exclude from the Nonprofit Exemption because it] 'deliver[ed the for-profit defendant's] own commercial message as part of a telemarketing campaign." *Id.* at *8 (quoting 2003 Order, 18 FCC Rcd. at 14089 ¶128, cleaned up). However, *Bank* held the non-profit was "shielded from liability," because "the facts alleged in the amended complaint do not support the conclusion that [the non-profit-defendant] made any call to promote the [for-profit defendant's] commercial services." *Id.* at *6 & n.6 (distinguishing *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 820 (N.D. Ill. 2016)). Here, Pinn alleges CCCF's direct involvement in the calls at issue. (FAC ¶¶41-42.)

### B. Pinn's TCPA Claims Prevail Under the 2003 Order and Prevailing Authority

Defendants anticipated that Pinn would argue the Nonprofit Exemption would not apply because CCCF acted as the for-profit Defendants' "conduit." (Def.'s Mot. at 6:2 (quoting

---

[2] *See Bennett v. Veterans Aid Pac, Inc.,* No. 21-340, 2022 WL 1632553, *1 (E.D. Tex. May 23, 2022) (political action committee soliciting donations).

[3] *See Wengle v. DialAmerica Mktg., Inc.,* 132 F. Supp. 3d 910, 911, 921 (E.D. Mich. 2015) ("for-profit telemarketing company" had no TCPA liability for calls made on behalf of non-profit, which sold magazines and solicited donations via such telemarketing); *Fitzhenry v. Indep. Ord. of Foresters*, No. 14-3690, 2015 WL 3711287 (D.S.C. June 15, 2015) (no TCPA liability for non-profit fraternal benefits society and telemarketer for calls selling non-profit's insurance policies); *Nguyen v. Telefund, Inc.*, No. 13-01607, 2014 WL 12167636, *1 (S.D. Cal. Nov. 12, 2014) (for-profit telemarketer not liable under TCPA for "contacting [plaintiff] on her cellular telephone on behalf of . . . nonprofit corporation"); *Spiegel v. Reynolds*, No. 15-8504, 2017 WL 4535951, *1 (N.D. Ill. Oct. 11, 2017) (no TCPA liability where for-profit telemarketer solicited donations for non-profit) (*Spiegel II*).

1   *Massaro*, 2021 WL 948805, at *6).) The precise contours of Defendants' argument here are not

2   clear, which raises concerns about what Defendants will argue in their reply. Procedural fairness

3   prohibits a movant from developing arguments in its reply brief when "[t]here is no reason that

4   [it] could not have properly raised [those] argument[s]" in its opening brief. *White v. Trans*

5   *Union, LLC*, 462 F. Supp. 2d 1079, 1083 n.1 (C.D. Cal. 2006). Only arguments "which are

6   argued specifically and distinctly in a party's opening brief" should be considered: "[a] bare

7   assertion of an issue does not preserve a claim." *Independent Towers of Wa. v. Washington*, 350

8   F.3d 925, 930 (9th Cir. 2003) (citation, punctuation omitted). This rule applies where a "reply

9   brief expands on" arguments that were "inadequately developed in the initial motion."

10  *Association of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D.

11  Cal. 2006). *See also Varela v. Lynch*, 670 F. App'x 970, 971 (9th Cir. 2016) (declining to

12  consider "issues that were mentioned in passing, but not actually briefed in [an] opening brief");

13  *Garner v. Ford Motor Co.*, 61 F.R.D. 22, 24 (D. Alaska 1973) (improper to file "one-half page

14  memorandum in support of a motion, barren of any authorities, thereby restricting plaintiffs'

15  opportunity for adequate opposition, and, subsequently, filing a 13-page reply memorandum

16  replete with authority, to which no response can be made").

17      Defendants attempt to distinguish *Massaro* on the basis that Pinn alleged that CCCF

18  promoted its own services via telemarketing, and Pinn "does not allege that she was solicited to

19  purchase goods of services from any for-profit entity." (Def.'s Mot. at 6:7-10.) If Defendants

20  contend they are immune simply because CCCF promoted its own services in the calls, that is

21  contrary to the 2003 Order and prevailing law.[4] Pinn's TCPA claim against CCCF where she

22  states "a plausible claim that [CCCF] was simultaneously promoting its organizational mission,

23  along with a for-profit corporation's product." *Massaro*, 2021 WL 948805, at *6. *See also*

24  _____

[4] Defendants' quotations from *Massaro* used to support this point elide significant
25  qualifications. (Def.'s Mot. at 6:10-13 (citing *Massaro*, 2021 WL 948805, at *6 for
    proposition that "'a blanket exemption exists if a non-profit is promoting its own
26  organization" or "was acting on its own behalf") *with Massaro*, 2021 WL 948805, at *5 ("if a
    tax-exempt non-profit entity was acting on its own behalf, the exemption would absolve the
27  non-profit of liability for the calls [but not if it] 'did so as an agent' of other defendants [or it
    acted] as conduit for the other for-profit defendants," cleaned up); *id.* at *6 ("blanket
28  exemption exists if a non-profit is promoting its own organization, [but] there is not the same
    clarity when the subject call/text involves a for-profit entity").)

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012) ("so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited," citing 2003 Report, 18 FCC Rcd. at 14097-98 ¶¶140-42).

If Defendants contend that Pinn did not allege any for-profit business was involved in the calls, that is incorrect. Pinn specifically alleged CCCF is a front for Defendant Doe 1, that "Doe 1 is a for-profit business affiliated with CCCF," that its "products and/or services are packaged and sold together with CCCF's debt counseling business," and that "Defendants use CCCF's non-profit status to facilitate Doe 1's business by acquiring customers through telemarketing, and then referring CCCF's clients to Doe 1 and/or packaging Doe 1's products or services together with CCCF's debt counseling services." (FAC ¶¶25, 31.)

If Defendants contend that Pinn does not allege the telemarketing call itself did not include information about Doe 1 or its products or services, that is also incorrect. Pinn alleges Doe 1's business may include "debt consolidation loans," and that the advisor she spoke with during the call "indicated that Pinn's debts would be consolidated through Defendants' program," and later sent a "'Debt Management Plan Summary' under which [her] loans would be consolidated under a 5.95% interest rate." (*Id.* ¶¶24-25, 42.) It is reasonable to infer that the advisor was promoting Doe 1's consolidation loans from these allegations. On a Rule 12(b)(6) motion, the Court "must draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citation, punctuation omitted).

Moreover, it is clear that the 2003 Order's exception to the Nonprofit Exemption only requires telemarketing calls on behalf of a for-profit business (as well as CCCF)—it does not require direct communication about Doe 1 or its services during those calls. The non-profit defendant in *Aranda* made calls which indicated recipients "would be eligible for a 'free cruise to the Bahamas'" if they answered the non-profit's political survey. *Aranda*, 179 F. Supp. 3d at 820. "The name of the cruise provider was not mentioned in the prerecorded messages, but those people who chose to learn more were transferred" to a travel agency. *Id.* Further, "[p]articipants who opted to partake in a cruise were also offered an upgraded package that would require them to take a timeshare tour at a Berkley facility." *Id*. Despite the fact that "Berkley's name was

never mentioned during these phone calls," and indeed ***only callers who ultimately went on the upgraded cruises were directly exposed to Berkley's timeshare sales***, Berkley was still not necessarily immune under the Nonprofit Exemption. *Id.* at 820, 828. "[E]ven if the calls were made with the primary purpose of raising political awareness . . . the evidence would not permit a reasonable jury to find that they did not advertise the commercial availability of defendants' vacation packages." *Aranda*, 179 F. Supp. 3d at 827. *Cf. Bank*, 2019 WL 1316966, at *8 (even where "initial Telemarketing Call did not state the name of the organization or person on whose behalf the call was placed," allegations supported plausible TCPA claim). *Aranda* makes clear that an agen for-profit element can disqualify the Nonprofit Exemption even if that for-profit element is not disclosed until long after the initial telemarketing call is done:

> If [the nonprofit defendant was] acting on their own behalf, these exemptions would absolve [it] of liability for the calls. But it is not clear . . . that [it] made the calls on its own behalf or rather did so as an agent of other defendants. . . . If [it] was acting as a conduit for . . . Berkley to solicit business and generate profit, then the calls can hardly be said to have been made "by or on behalf of a tax-exempt nonprofit organization."

*Aranda*, 179 F. Supp. 3d at 828. The 2003 Order is clear that a telemarketing call that originates from an agency relationship with a for-profit business is disqualified under the Nonprofit Exemption: the focus is not necessarily the content of the call itself. *See* 2003 Report, at 18 FCC Rcd. at 14090 ¶128 ("call to sell debt consolidation services . . . is a commercial call regardless of whether the consumer is also referred to a tax-exempt nonprofit organization for counseling services"). CCCF's liability depends on whether it acted for solely itself or it was also acting on behalf of a for-profit business (namely, Doe 1).

Scrutinizing whether CCCF acted as an agent for a for-profit business best addresses concerns about "the use of the non-profit exemption to conceal for what is in fact a commercial scheme." *Massaro*, 2021 WL 948805, at *6. In *Massaro*, the animal rights non-profit's text messages mentioned a for-profit company's meat substitute product, but it was unclear if the non-profit spontaneously promoted this product for its own purposes or under an agreement with the company. *Id.* at *1. *Massaro* focused on allegations that the for-profit business paid the non-profit to promote its products. *Id.* at *6. Hence, "while it is possible that further litigation will

1   reveal that [CCCF's calls were not made] with a commercial purpose, for now, [CCCF's] Rule

2   12(b)(6) motion to dismiss based on the non-profit exemption [should be] DENIED." *Id.* at *7.

3          In any event, Defendants have "the burden of establishing the applicability of the

4   nonprofit exemption, because the exemption is in the nature of an affirmative defense." *Spiegel*

5   *v. Reynolds*, No. 15-8504, 2017 WL 4535951, *3 (N.D. Ill. Oct. 11, 2017) (*Spiegel I*). *Cf. Nayab*

6   *v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 494 (9th Cir. 2019) ("burden of proving

7   justification or exemption under a special exception to the prohibitions of a statute generally rests

8   on one who claims its benefits," citations omitted, cleaned up). "Dismissal under Rule 12(b)(6)

9   on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to

10  securing relief on the face of the complaint. [If] an asserted defense raises disputed issues of fact,

11  dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999,

12  1004 (9th Cir. 2014). Pinn alleges facts which at least dispute the Nonprofit Exemption's

13  application, so dismissal is improper.

14  **III.    Even if Court Dismisses the FAC, Pinn Should Be Given an Opportunity to Amend**

15         Section II explains why the Nonprofit Exemption does not apply to the facts alleged in

16  the FAC even if CCCF is a tax-exempt nonprofit organization. If the Court still found the FAC's

17  allegations deficient, "[i]t is black-letter law that a district court must give plaintiffs at least one

18  chance to amend a deficient complaint, absent a clear showing that amendment would be futile."

19  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (citing *Eminence*

20  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

21                          **NOTICE OF LODGING PROPOSED ORDER**

22         Plaintiff Kelly Pinn lodged with the Court the attached order by emailing a Microsoft

23  Word version of the order below to "DMRpo@cand.uscourts.gov." *See*

24  https://cand.uscourts.gov/judges/ryu-donna-m-dmr/.

25

26  Dated: October 13, 2022          By: _____s/Ethan Preston_____
                                          Ethan Preston (263295)
27                                        ep@eplaw.us
                                          PRESTON LAW OFFICES
28                                        4054 McKinney Avenue, Suite 310
                                          Dallas, Texas 75204

Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*