UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN,<br><br>    Plaintiff,<br><br>v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-04048-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Re: Dkt. No. 22 |

Defendants Consumer Credit Counseling Foundation ("CCCF"); National Budget Planners of South Florida, Inc. ("NBP"); and Ishwinder Judge, an individual, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Kelly Pinn's first amended class action complaint. [Docket No. 22.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

I.  **BACKGROUND**

In this putative class action, Pinn challenges Defendants' alleged practice of making unsolicited telemarketing phone calls to telephones of individuals who have registered their phone numbers on the national Do Not Call registry. Pinn makes the following allegations in the first amended complaint ("FAC"), all of which are taken as true for purposes of this motion.[1]

Pinn is a United States resident. Her residential telephone has been registered on the national Do Not Call registry for over ten years. [Docket No. 18 (FAC) ¶¶ 3, 45.] CCCF is a Florida corporation that does business in California. It operates as a non-profit company "and

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

purports to offer credit counseling services and debt management plans on a non-profit basis." *Id*. at ¶ 21. NBP is a Florida corporation that "is registered with the California Secretary of State as a Florida corporation as [sic] having the same office as CCCF." *Id*. at ¶ 5. Judge is CCCF's Chief Executive Officer, Secretary, and Chief Financial Officer. Pinn alleges on information and belief that he is CCCF's sole owner, officer, and employee. *Id*. at ¶ 6. She further alleges that "all CCCF's conduct alleged [in the FAC] is necessarily controlled, carried out by, and/or attributable to Judge." *Id*. at ¶ 7.

In April 2022, Pinn received multiple unsolicited and unauthorized telemarketing calls from the same telephone number. The number had been spoofed and belonged to a restaurant in Tennessee. Pinn answered the last of these calls. When she answered, the caller initially indicated that he was calling from "Credit Associates" and asked Pinn about her financial situation. After Pinn waited on hold for about ten minutes, the caller connected Pinn to "his advisor." *Id*. at ¶¶ 39, 40. The advisor told Pinn that she was from CCCF and "indicated that Pinn's debts would be consolidated through Defendants' program," and provided Pinn with an email address and telephone number linked to CCCF. *Id*. at ¶¶ 41, 42. Pinn provided the advisor with her email address, and after the call, "CCCF sent an email which promot[ed] a 'Debt Management Plan Summary' under which consumer loans would be consolidated under a 5.95% interest rate . . ." *Id*. at ¶ 42.

On April 13, 2022, Pinn emailed a complaint to CCCF. She alleges that "NBP forwarded [her] complaint to CCCF's telemarketing vendor, [non-party] Digital Media Solutions, LLC ('DMS') and requested evidence that Pinn had consented to these calls." DMS confirmed the calls were made "via a live agent campaign" but "did not provide evidence of Pinn's consent to those calls and denied that it made or authorized those calls." *Id*. at ¶ 43. Pinn alleges that she "does not have clear information about DMS's role in the calls she received." *Id*.

Pinn alleges on information and belief that "NBP provides certain back-office and administrative services to CCCF, including coordinating CCCF's responses to Pinn's post-call communications and communication with DMS, and receives income derived from Defendants' telemarketing activities and . . . exerts control over CCCF's telemarketers, ratifies their conduct,

and/or participates in a joint venture that generates income from the telemarketing alleged" in the FAC. *Id*. at ¶ 44. However, "Pinn does not have clear information on whether NBP's product or services were sole in CCCF's telemarketing" based on "the available record." *Id*.

Pinn alleges that she never provided her telephone number to Defendants or their agents for any purpose whatsoever, and Defendants and their agents "did not obtain Pinn's prior express consent to make telemarketing calls to her telephone number." Further, she alleges that she did not have an established relationship with Defendants; Defendants did not call to collect an existing obligation; and Pinn did not ask Defendants to call her. In sum, she alleges that "Defendants never had valid consent to call Pinn." *Id*. at ¶ 45.

Pinn brings one claim against Defendants on behalf of herself and a class of individuals: violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). Defendants now move to dismiss the FAC.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

3

2002).

## III.     DISCUSSION

The TCPA authorizes "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring an action for injunctive relief and/or actual or statutory damages of up to $500 per violation. 47 U.S.C. § 227(c)(5). The corresponding regulations provide in relevant part that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

The regulations define the term "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" but include exceptions. In relevant part, a telephone solicitation "does not include a call or message . . . [b]y or on behalf of a tax-exempt nonprofit organization," 47 C.F.R. § 64.1200(f)(15)(iii).[2] Defendants call this the "nonprofit exemption." *See* Mot. 4-5.

Defendants move to dismiss the FAC because it alleges that the telephone calls at issue were made to promote CCCF's non-profit "debt counseling services." *See* FAC ¶¶ 21 (CCCF "purports to offer credit counseling services . . . on a non-profit basis"), 31. Accordingly, Defendants cannot be held liable for the telephone calls under the TCPA's nonprofit exemption. Mot. 5 (citing *Nguyen v. Telefund, Inc.*, No. 13-cv-01607-BAS(WVG), 2014 WL 12167636, at *1 (S.C. Cal. Nov. 12, 2014) (granting summary judgment on TCPA claim against for-profit entity for calls made pursuant to contract "to solicit and collect donations and maintain support from [nonprofit's] donor base on [nonprofit's] behalf"; holding "there is no basis for distinguishing

---

[2] Similarly, the TCPA defines the term "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message . . . by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4)(C).

4

1  between those calls made by a tax-exempt nonprofit and those made by a professional for-profit
2  telemarketer on its behalf")).

3     Pinn disputes that the TCPA's nonprofit exemption bars her claim, arguing that the
4  exemption does not categorically prohibit TCPA claims against nonprofit companies where, as
5  alleged in the FAC, a nonprofit (CCCF) was acting as a "conduit" for the for-profit Defendants to
6  promote their business(es). *See* Opp'n 5-6 (citing *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-
7  00510-AJB-MSB, 2021 WL 948805, at *6 (S.D. Cal. Mar. 12, 2021)).

8     The Ninth Circuit has not addressed the nuances of the nonprofit exemption. However,
9  Federal Communications Commission ("FCC") orders discussing the exemption and *Massaro*,
10 2021 WL 948805, at *5-7, support Pinn's position. First, in a 2003 order, the FCC discussed the
11 "tax-exempt nonprofit organization exemption" in the TCPA and noted that "[i]n crafting the
12 TCPA, Congress sought primarily to protect telephone subscribers from unrestricted commercial
13 telemarketing activities, finding that most unwanted telephone solicitations are commercial in
14 nature." The FCC noted concerns about "calls made jointly by nonprofit and for-profit
15 organizations," including that the exemption "frequently has been used to veil what is in reality a
16 commercial venture." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
17 18 F.C.C. Rcd. 14014, 14087-88 (2003). The FCC concluded that "there has been no change in
18 circumstances that warrant distinguishing those calls made by a professional marketer on behalf of
19 a tax-exempt nonprofit organization from those made by the tax-exempt nonprofit itself." *Id*. at
20 14089. It continued: "[i]f, however, a for-profit organization is delivering its own commercial
21 message as part of a telemarketing campaign (*i.e.*, encouraging the purchase or rental of, or
22 investment in, property, goods, or services), even if accompanied by a donation to a charitable
23 organization or referral to a tax-exempt nonprofit organization, that call is not *by or on behalf of a*
24 *tax-exempt nonprofit organization*. Such calls, whether made by a live telemarketer or using a
25 prerecorded message, would not be entitled to exempt treatment under the TCPA." *Id*. (emphasis
26 in original). The FCC provided an illustrative example: "[a] call to sell debt consolidation
27 services, for example, is a commercial call regardless of whether the consumer is also referred to a
28 tax-exempt nonprofit organization for counseling services." *Id*. at 14089-90.

1   The FCC reaffirmed this determination in a 2005 order, stating "[i]n circumstances where telephone calls are initiated by a for-profit entity to offer its own, or another for-profit entity's products for sale--even if a tax-exempt nonprofit will receive a portion of the sale's proceeds--such calls are telephone solicitations as defined by the TCPA." The FCC reasoned that "to exempt for-profit organizations merely because a tax-exempt nonprofit organization is involved in the telemarketing program would undermine the purpose of the do-not-call registry." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3800 (2005).[3]

In *Massaro*, the court considered whether a nonprofit, People for the Ethical Treatment of Animals ("PETA"), could be held liable under the TCPA for sending marketing text messages promoting alternative animal food products ("Beyond Meat") to an individual without her consent. 2021 WL 948805, at *1, 5. PETA argued in part that it could not be held liable due to its status as a nonprofit organization. *Id*. at *4. The court considered case law, FCC regulations, and the legislative history of the TCPA to conclude that "the non-profit exemption does not apply to these facts at this stage." The court noted that "the regulations make clear that a blanket exemption exists if a non-profit is promoting its own organization," but that "there is not the same clarity when the subject call/text involves a for-profit entity." *Id*. at *6 (citing the FCC's 2003 order, 18 F.C.C. Rcd. 14014 at 14088). The court ultimately held that the non-profit exemption was inapplicable to PETA at the pleading stage because "it appear[ed] the subject text messages [were] made with dual commercial and non-commercial purpose. Plaintiff's allegations provide that PETA, as a nonprofit, was acting as a conduit for Beyond Meat in advertising the availability of the alternative meat product at a certain restaurant." *Id*. While PETA denied the plaintiff's allegations that it received compensation from Beyond Meat for the marketing messages, the court held that it was obligated to accept the allegations as true: "if PETA was indeed acting as a conduit for [Beyond Meat] to solicit business and generate profit, then the [texts] can hardly be said to

---

[3] The court is bound by the FCC's interpretations of the TCPA unless those interpretations are invalidated by a court of appeals. *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015); *see also Leckler v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528, at *2-3 (N.D. Cal. Nov. 21, 2008).

have been made 'by or on behalf of a tax-exempt nonprofit organization.'" *Id*. (quoting *Aranda v. Caribbean Cruise Line, Inc*., 179 F. Supp. 3d 817, 828 (N.D. Ill. 2016) (analyzing a different TCPA exemption for calls made for a non-commercial purpose, 47 C.F.R. § 64.1200(a)(3)).

The court finds *Massaro* persuasive and follows it here. The FAC plausibly alleges that the call at issue involved a for-profit entity and was not solely to promote CCCF's own products or services. The FAC alleges that federal and state laws regulate businesses that "offer[ ] to 'improv[e] any consumer's credit record, credit history, or credit rating' or related services," and that such laws exempt nonprofit organizations from the regulations. FAC ¶¶ 22, 23. It alleges that the IRS has previously "identified individuals and businesses that are involved in a scheme to create [counseling services] as a front for related for-profit businesses." *Id*. at ¶ 23 (alteration in original). Such for-profit businesses include debt consolidation loans, "educational materials" associated with nonprofit credit counseling services, and processing fees related to "debt management plans created by the non-profit debt counseling services." *Id*. at ¶ 24. The FAC alleges that "Defendants use CCCF's non-profit status to facilitate their for-profit businesses" in such a manner. Specifically, it alleges that "Defendant Doe 1 is a for-profit business affiliated with CCCF, which also operates in California" and "offers products and services marketed to CCCF's clients," including debt consolidation loans, payment processing services, and/or educational materials. *Id*. at ¶ 25.[4] According to the FAC, "Doe 1's products and/or services are packaged and sold together with CCCF's debt counseling business," and "Defendants use CCCF's non-profit status to facilitate Doe 1's business" by either referring CCCF's customers to Doe 1 "and/or packaging Doe 1's products or services together with CCCF's debt counseling services." *Id*. at ¶¶ 25, 31.

The FAC further alleges that Defendant Judge "owns and acts as an officer for certain for-profit businesses," and that Judge and/or any other owners or officers of Judge's for-profit businesses "operate[d] for-profit businesses that sold products or services to customers who CCCF

---

[4] The FAC also alleges that Pinn has served discovery on CCCF to identify Doe 1 and/or its products or services, but that CCCF has produced only "some documents" and refused to meet and confer about its responses until after the motion to dismiss is resolved. FAC ¶ 29.

7

acquired via telemarketing." *Id*. at ¶ 26.

Pinn alleges that the advisor with whom she spoke during the call "indicated that Pinn's debts would be consolidated through Defendants' program" and later sent her a "Debt Management Plan Summary." Pursuant to this plan, consumer loans would be consolidated under a 5.95% interest rate, which was lower than Pinn could obtain if she did not enter into the debt management plan. *Id*. at ¶ 42. These allegations support a reasonable inference that the CCCF advisor was promoting Doe 1's consolidation loans in connection with the call, and not simply promoting CCCF's own products or services. Notably, the purpose and nature of the call alleged in the FAC is similar to that described by the FCC in its 2012 order: "A call to sell debt consolidation services, for example, is a commercial call regardless of whether the consumer is also referred to a tax-exempt nonprofit organization for counseling services." As the court in *Massaro* concluded, if CCCF was "acting as a 'conduit for [Doe 1] to solicit business and generate profit, then the call[ ] can hardly be said to have been made 'by or on behalf of a tax-exempt nonprofit organization.'" 2021 WL 948805, at *6.

Pinn may ultimately be unable to prove the connection between CCCF and for-profit businesses or that the call was not made "with a commercial purpose." *See Massaro*, 2021 WL 948805, at *7. However, accepting the allegations in the FAC as true and construing all reasonable inferences in Pinn's favor, the court concludes that the TCPA's nonprofit exemption does not bar Pinn's claim at the pleading stage.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: January 3, 2023



Donna M. Ryu
United States Magistrate Judge