UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-04048-DMR<br><br>**ORDER ON DMS'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 66 |

In this putative class action, Plaintiff Kelly Pinn challenges Defendants' alleged practice of making unsolicited telemarketing phone calls to individuals who have registered their phone numbers on the national Do Not Call registry. Defendants are Digital Media Solutions, LLC ("DMS"); Consumer Credit Counseling Foundation, Inc. ("CCCF"); National Budget Planners of South Florida, Inc. ("NBP"); and Ishwinder Judge, an individual. DMS now moves pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the Second Amended Complaint ("SAC") for lack of personal jurisdiction and failure to state a claim. [Docket No. 66.] Pinn moves to continue the motion to dismiss to allow her to complete jurisdictional discovery and the parties filed a joint discovery letter regarding their discovery disputes. [Docket No. 83, 87.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to continue is denied. The motion to dismiss for lack of personal jurisdiction is granted. The joint discovery letter is denied without prejudice.

**I.　BACKGROUND**

**　　A.　Allegations in the Second Amended Complaint**

Pinn makes the following allegations in the operative SAC. [Docket No. 82 (SAC).] Pinn is a United States resident. Her residential telephone is registered on the national Do Not Call

registry. *Id*. at ¶ 3. CCCF and NBP are Florida corporations that do business in California. Judge is CCCF's Chief Executive Officer, Secretary, and Chief Financial Officer. *Id*. at ¶¶ 4-6. CCCF "purports to offer credit counseling services and debt management plans." *Id*. at ¶ 22. Pinn alleges that CCCF, NBP, and Judge "use telemarketers to solicit business from potential consumers across the country . . . to purchase their products and services through aggressive, outbound telemarketing campaigns" and use "illegal telemarketing campaigns to promote" their debt counseling services. *Id*. at ¶ 30.[1]

DMS is a Delaware corporation with an office in Florida. *Id*. at ¶ 8. Pinn alleges that "[o]n August 2, 2021, CCCF contracted with DMS to obtain live transfers of qualified 'leads,' potential customers of CCCF[.]" On January 22, 2022, DMS contracted with Vedanata Infotech ("Vedanata"), a telemarketing company in India, "to make outgoing calls and to supply such leads to CCCF." *Id*. at ¶¶ 32, Exs. 1 at 0047-48, 2 at 0045-46. Pinn alleges that "DMS maintained a direct relationship with Vedanata." DMS prohibited CCCF from entering into a relationship with Vedanata and Vedanata "paid DMS for 'data,' meaning contact information of call recipients." SAC ¶ 33. She further alleges that "DMS exercised control over Vedanata[']s telemarketing activities, and managed its telemarketing on behalf of CCCF and its other clients." *Id*. at ¶ 34.

Pinn alleges that she received multiple unsolicited and unauthorized telemarketing calls from a spoofed telephone number in April 2022. Pinn answered the last of these calls. When she answered, the caller stated that he was calling from "Credit Associates" and asked Pinn about her financial situation. The caller eventually connected Pinn to "his advisor." *Id*. at ¶¶ 40-42. The advisor told Pinn that she was from CCCF, offered to consolidate Pinn's debts through CCCF's program, and provided Pinn with an email address and telephone number linked to CCCF. *Id*. at ¶ 42. CCCF later sent Pinn an email promoting a debt consolidation loan. *Id*. at ¶ 43.

On April 13, 2022, Pinn emailed a complaint about the call to CCCF. She alleges that CCCF forwarded her complaint to DMS and requested evidence of Pinn's consent to the calls.

---

[1] The SAC includes allegations about a Doe Defendant that Pinn alleges is a "for-profit business affiliated with CCCF." *See* SAC ¶ 26. However, the deadline to seek leave to amend the pleadings to add new parties was April 18, 2023, and Pinn failed to name the Doe Defendant by that deadline.

"Although DMS had records of Vedanata's calls to Pinn and confirmed the calls were made via a live agent campaign, it did not provide evidence of Pinn's consent to those calls," denied that it made the calls, and asserted that the calls were made by Vedanata. *Id*. at ¶ 46. DMS also "indicated it would hold back payments to Vedanata . . . for the amount of Pinn's demand until Pinn's TCPA claims were resolved." *Id*. at ¶ 33. The CCCF Defendants demanded DMS defend and indemnify them in this action. *Id*. at ¶ 46.

Pinn alleges that she never provided her telephone number to Defendants or their agents for any purpose, and that Defendants and their agents "did not obtain Pinn's prior express consent to make telemarketing calls to her telephone number." She further alleges that she did not have an established relationship with Defendants, Defendants did not call to collect an existing obligation, and she never asked Defendants to call her. *Id*. at ¶ 44. She brings one claim against Defendants on behalf of herself and a class of individuals: violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5).

### B.     Evidence Submitted with the Motion

DMS submits evidence that in its previous dealings with Pinn, she identified her telephone number as one starting with area code 817, which is a Texas area code, and that Pinn is a resident of Texas. [Docket No. 67 (Giardina Decl. June 1, 2023) ¶ 3.] According to DMS, it placed Pinn's number on an internal, DMS-maintained Do Not Call list in December 2020. *Id*. at ¶ 4.

DMS disputes that it "place[d] the call to Pinn about which she complains in this case" and asserts that "the call was not placed on behalf of DMS or to sell DMS's services." According to DMS, Vedanata placed the call to Pinn and "after speaking with Pinn for some time and determining that she met certain criteria, transferred the call" to CCCF. *Id*. at ¶ 5. DMS asserts that it "had no role in the call." It explains that "DMS has a marketplace of sorts where companies with leads on consumers (e.g., Vedanata) can sell those leads to companies wanting to sell their services (e.g., CCCF); it is a place where parties can come together and transact." *Id*. at ¶ 6. DMS refers to its marketplace as "the 'DMS Exchange'" and states that "[w]ith respect to calls placed by third-parties and sold to yet another third-party over the DMS Exchange, DMS does not have any role in the actual calls placed or the goods or services offered on the calls." *Id*.

3

1    DMS explains that on April 12, 2022, Vedanata attempted to transfer calls with Pinn to CCCF via the DMS Exchange but "that the attempted transfers were stopped 34 times because Pinn's number was on" DMS's Do Not Call list. On the 35th attempt, the call was connected to CCCF due to a formatting error with Pinn's number. *Id*. at ¶ 12.

DMS is incorporated in Delaware with a principal place of business in Florida. It states that it has "no officers, directors, property, business offices, or real estate in California." *Id*. at ¶ 13. It admits that it has "remote-work employees in California" but asserts that those California employees "had no involvement" with Vedanata calling Pinn, "the application of the DMS-maintained Do-Not-Call list, or the transfer of the call to CCCF." *Id*.

DMS entered into an "Insertion Order" agreement with Vedanata (the "IO") on January 26, 2022. Giardina Decl. ¶ 8, Ex. 1 (Vedanata IO). Adam Sthay executed the IO on behalf of DMS. The IO lists an address in Clearwater, Florida for DMS. Aman Gupta executed the agreement on behalf of Vedanata, listing an address for Vedanata in West Bengal, India. *Id*. The Vedanata IO incorporated a "Digital Media Solutions Publisher Agreement" which contains a provision that it will be "governed and construed in accordance with" Florida law. *Id*. at 1, 9 § 15.

DMS entered into an Insertion Order agreement with CCCF on August 2, 2021. Giardina Decl. ¶ 9, Ex. 2 (CCCF IO). Rob Camhe executed the IO on behalf of DMS, which lists the same Florida address. Purus Engineer executed the agreement on CCCF's behalf, listing an address in Livermore, California. *Id*. The CCCF IO incorporated by reference a Master Services Agreement which contains a provision that it will be "governed by the laws of the State of Florida." *Id*. at 1, ECF p. 19 § 24. Pursuant to the CCCF IO, CCCF paid DMS "for 'Debt Live Transfers' (i.e., per 'call that converts past 120 second buffer')." [Docket No. 85 (Preston Decl. June 22, 2023) ¶ 11, Ex. 10.]

Pinn does not dispute DMS's description of its "DMS Exchange" and contends that "DMS generally solicits business from clients nationwide, including clients in California, via its DMS Exchange." Preston Decl. ¶ 3. She submits evidence that DMS maintains an agent for service of process in California and that "several DMS employees reside and do business in California and in this District," including Adam Sthay, Senior Vice President of Pay Per Call. *Id*. at ¶¶ 2, 7, Ex. 6.

4

1  Pinn states that she obtained email header information from Google LLC that "indicates scores of
2  emails sent between Vedanata's email address . . . and DMS email addresses . . . since January 22,
3  2022, when DMS signed its contract with Vedanata, and several more in the weeks preceding that
4  date," and that "Sthay was either the sender or addressee on the vast majority of these emails." *Id*.
5  at ¶ 20.

### C. Motion to Dismiss

DMS now moves to dismiss Pinn's claim under Rule 12(b)(2) on the basis that the court lacks personal jurisdiction over DMS and under Rule 12(b)(6) for failure to state a claim. On the same day as her opposition to the motion was due, Pinn filed a motion pursuant to Civil Local Rule 6-3 to continue the hearing on the motion to allow her to complete jurisdictional discovery in which she describes existing discovery disputes with DMS, along with a "conditional" opposition for the court to consider if it denies the motion to continue. [Docket Nos. 83 (Mot. for Discovery), 84 (Opp'n).] Pinn and DMS subsequently filed a joint discovery letter outlining their discovery disputes. [Docket No. 87.] The court first addresses the motion to dismiss and then addresses the request for jurisdictional discovery and the discovery letter.

## II. MOTION TO DISMISS

### A. Legal Standards

#### 1. Rule 12(b)(2)

"Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Because California's long-arm statute allows a court to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution, "the jurisdictional analyses under state law and federal due process are the same." *Id.*; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). In a motion to dismiss for lack of personal jurisdiction, the non-moving party "bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, a district court rules on a motion

5

1   to dismiss without holding an evidentiary hearing, the non-moving party "need only demonstrate
2   facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495,
3   1498 (9th Cir. 1995). "[U]ncontroverted allegations in the complaint must be taken as true . . .
4   [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the
5   plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### 2.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule

6

12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### B. Rule 12(b)(2) Motion

DMS argues that it is not subject to general or specific personal jurisdiction in California. Pinn does not contend that the court has general jurisdiction over DMS. *See* Opp'n 6. She argues that the court has "pendent personal jurisdiction over [her] claims" and that the court has specific personal jurisdiction over DMS. *Id*. at 4-6.

#### 1. Pendent Claim Personal Jurisdiction

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004). The Ninth Circuit recognizes what courts have described as "pendent claim personal jurisdiction," such that "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id*.; *see Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 401 (6th Cir. 2021) (describing the Ninth Circuit's approach in *Action Embroidery*). Pendent claim personal jurisdiction "is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Action Embroidery*, 368 F.3d at 1180-81. The Ninth Circuit has reasoned that "[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Id*. at 1181.

Pendent claim personal jurisdiction is not at issue here. Pinn brings a single TCPA claim, and the parties dispute whether the court has personal jurisdiction over DMS for that claim.

#### 2. Specific Jurisdiction

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Sup.*

*Ct. Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011). Pinn does not contend that the court has general jurisdiction over DMS. Accordingly, the only issue is whether the court may exercise specific jurisdiction over DMS.

Where a party is not subject to general jurisdiction, due process requires that a defendant have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The Ninth Circuit uses a three-part test to analyze whether a party's "minimum contacts" comport with the doctrine articulated in *International Shoe*:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two factors of the test. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff meets its burden on the first two factors, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). If any of the three factors are not met, "jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first factor of the specific jurisdiction test, purposeful availment and purposeful direction are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment is most often used in cases related to contract disputes and purposeful direction is used in cases that sound in tort. *Id.* Purposeful direction is analyzed under the three-part test derived from *Calder v. Jones*,

8

465 U.S. 783 (1984): "that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The *Calder* test is appropriate here because TCPA actions are "essentially . . . tort claim[s]." *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019); *Nichols v. 360 Ins. Grp. LLC*, No. 22-cv-03899-RS, 2023 WL 163201, at *3 (N.D. Cal. Jan. 11, 2023) (applying purposeful direction test "[b]ecause TCPA claims sound in tort"). Accordingly, "the court's personal jurisdiction inquiry is appropriately limited to an examination of whether [DMS] may be said to have purposefully directed [its] activities at California," *see Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273, at *3 (C.D. Cal. May 20, 2020). Pinn bears the burden of establishing that DMS purposefully directed its conduct at California. *See Schwarzenegger*, 374 F.3d at 802, 807 ("[b]ecause [the plaintiff] has not satisfied all three parts of the *Calder* effects test, he has not shown that [defendant] purposefully directed his conduct at California.").

### a. Intentional Act

In the Ninth Circuit, an "intentional act" is an "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("*Washington Shoe*"), *abrogation on other grounds recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017).

Pinn asserts that DMS made a "series of intentional acts . . . directed at California," including 1) contracting with CCCF in California; 2) contracting with "Vedanata to supply CCCF with leads from California"; 3) "manag[ing] Vedanata's telemarketing activities from California"; and 4) "transferr[ing] Vedanata's spoofed calls to CCCF in California." Opp'n 7.

DMS does not dispute that it contracted with CCCF in California. As to the second and third actions, Pinn asserts that "Sthay contracted with and managed Vedanata from California, for the benefit of" CCCF, DMS's California client. Opp'n 11. DMS does not dispute that Sthay is located in California or that he executed DMS's IO with Vedanata on DMS's behalf.

1 As to whether Sthay "managed Vedanata from California," the parties dispute whether DMS manages or "controls" Vedanata. *See* Mot. 20. In support of the claim of a management relationship between the two entities, Pinn asserts that after she complained to CCCF about the telemarketing call, DMS asked Vedanata for a recording of the call to Pinn and was given one. She further asserts that DMS withheld payment to Vedanata pending resolution of Pinn's TCPA claim. Pinn also asserts that DMS supplied Vedanata with "data," or "contact information it used to call leads . . ." Opp'n 3 (citing SAC ¶ 33, Ex. 2 (communications between DMS and Vedanata)). For its part, DMS relies on the contract between DMS and Vedanata in support of its claim that it "did not have control over Vedanata," noting that "no provision of [the agreement] permits DMS to monitor or control Vedanata's calls." Mot. 21.

DMS also disputes that it "transferred" Vedanata's calls to California, arguing that "Vedanata transferred the call to CCCF." Reply 4. DMS submitted a declaration by Kat Giardina, DMS's Compliance Director, in which she asserts that Vedanata "transferred the call" to CCCF, but also alludes to DMS's role in such transfers. Specifically, she states, "calls are transferred from publishers (like Vedanata) to advertisers (like CCCF) across the DMS Exchange" and states that "DMS stops [such] calls if they are on DMS-maintained Do-Not-Call lists." Giardina Decl. ¶¶ 5, 11.

Ultimately, the court need not resolve these disputes because Pinn submits evidence of numerous intentional acts by DMS that DMS does not rebut. These include contracting with CCCF and playing some role in facilitating the connection between Vedanata and CCCF.

          **b.**     **Express Aiming and Resulting Harm**

The second and third prongs of the *Calder* test require that the non-forum defendant "expressly aimed" the intentional act(s) at the forum state, causing harm that the defendant "knows is likely to be suffered in the forum state." *Dole Food Co.*, 303 F.3d at 1111.

The Supreme Court has established that the "express aiming" prong requires a showing that "the defendant's conduct connects him to the *forum* in a meaningful way," not merely to a forum resident. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) ("Plaintiffs were required to make a prima

10

facie showing that Defendants' alleged actions were directed at [the forum state], not just at individuals who reside there."). This court has previously observed that "[i]n TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state." *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) (citing *Schlesinger v. Collins*, No. 19-CV-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (collecting cases)) and *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-WQH-KSC, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) ("The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code.")). *Schlesinger* observed that these cases are consistent with *Walden* because "target[ing] California telephone numbers (and presumably residents of California) . . . inflict[s] harm within this state." 2019 WL 4674396, at *2. By contrast, courts have declined to find personal jurisdiction over TCPA defendants when they had no reason to know that their conduct would be felt in California, including because the calls or texts were made to non-California phone numbers. *See, e.g., Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018); *Born*, 2020 WL 3883273, at *4; *Nichols*, 2023 WL 163201, at *5-6.

The express aiming "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant *knows to be a resident of the forum state*." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis added). Here, Pinn does not dispute that she is a Texas resident and that the calls at issue were made to her phone number with a Texas area code. "It should go without saying that an allegedly tortious call to [a state other than California] does not amount to an intentional act expressly aimed at California." *Born*, 2020 WL 3883273, at *4; *see Komaiko*, 2020 WL 1915884, at *7 (holding that plaintiffs, who had phone numbers with non-California area codes, failed to meet their burden to show that out-of-state defendant that operated "customer relationship marketing platform" for cannabis dispensaries "expressly aimed conduct at California" by "sending/facilitating text messages from non-Californian dispensaries to non-Californian

11

numbers").

Pinn repeatedly stresses in her opposition that DMS transferred the call to CCCF in California. *See* Opp'n 7, 8, 11. DMS disputes this, but even crediting Pinn's assertion as true, *see Schwarzenegger*, 374 F.3d at 800, it does not change the outcome because Pinn's TCPA claim is based on her receipt of a phone call from Vedanata, even though she had not consented to the call. It is not based on Vedanata's transfer of the call to CCCF. *See* SAC ¶ 46. In this way, CCCF's location is not relevant to the express aiming requirement because Pinn would have suffered the same harm regardless of its location—i.e., the call she received from Vedanata without her consent. Pinn emphasizes the contractual relationship between DMS and CCCF in arguing that DMS "purposefully directed its conduct to California." Opp'n 7-8. However, the existence of that relationship does not satisfy Pinn's burden to show an intentional act expressly aimed at California. For example, in *Born*, a plaintiff in Wisconsin received a call to his cell phone bearing a Wisconsin area code. 2020 WL 3883273, at *4. The call was "placed to [the plaintiff] and then transferred to VAD," a telemarketer, by a different entity. *Id*. at *2. The plaintiff filed suit in California against VAD, which was based in California, and two non-California defendants, and alleged that "VAD carried out a telemarketing campaign" pursuant to its agreement with the non-California defendants. *Id*. at *1-2. The court held that "[a]n out-of-state defendant's mere agreement with a third-party located within the forum, pursuant to which that third-party independently operates an advertising or solicitation campaign, does not satisfy the first prong of the three-part jurisdictional analysis set forth in *Schwarzenegger*, and is thus an insufficient basis for an exercise of specific jurisdiction over the foreign defendant." *Id*. at *4.

Pinn also asserts that the court may exercise personal jurisdiction over DMS because "DMS managed Vedanata's telemarketing activities from California" and contracted with Vedanata "from California" based on Sthay's presence in California. Opp'n 7, 10. The court in *Weisbein v. Allergan, Inc*., No. SA CV 20-0801 FMO (ADSx), 2022 WL 1288222, at *5 (C.D. Cal. Mar. 28, 2022), rejected a similar argument. In *Weisbein*, the plaintiff, a Florida resident, alleged that an out-of-state defendant sent him text messages in violation of the TCPA. *Id*. at *1. The plaintiff argued that jurisdiction in California was proper because two of the defendant's

employees who "commissioned" and oversaw the text marketing campaign lived and worked in California. *Id*. at *4. The court held that the fact "[t]hat certain of [the defendant's] California employees had some involvement in authorizing, outsourcing, or overseeing the text program" did not alter the conclusion that the "allegedly tortious" texts to Florida did not "amount to an intentional act expressly aimed at California." *Id*. at *5. The plaintiff offered other facts about the "involvement of various companies with ties to California in the operation of the text program" and related activities to support the exercise of personal jurisdiction over the defendant. The court rejected this, holding that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction" and concluding that the California contacts "appear[ed] more relevant to a purposeful availment analysis, which is inapplicable to the instant case." *Id*. at *5 & n.4 (citations omitted).

Ultimately, the parties do not dispute that Vedanata, not DMS, called Pinn; that Pinn did not receive the calls in California and did not have a phone number with a California area code; and that Vedanata is not located in California. *See* SAC ¶¶ 40, 46; Giardina Decl. ¶¶ 3, 5, Vedanata IO. In other words, Pinn alleges that a non-California entity called her at her non-California phone number. She offers no authority to support a finding of express aiming and resulting harm on these or similar facts. Accordingly, Pinn has not made a prima facie showing of the first factor of the three-part test for specific jurisdiction.[2]

### 3. Request for Jurisdictional Discovery

Pinn requests the opportunity to conduct discovery on the jurisdictional issue. A court may permit jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977). Courts in this district have held that "a plaintiff need not establish a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." *Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*,

---

[2] Because the court concludes that Pinn has not satisfied the first factor of the specific jurisdiction analysis, it does not reach the parties' arguments on the remaining two factors or whether the SAC fails to state a claim against DMS.

No. 15-cv-03566-JSC, 2015 WL 6089276, at *8 (N.D. Cal. Oct. 16, 2015) (citing cases). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts," *see Boschetto*, 539 F.3d at 1020, or more than "bare allegations in the face of specific denials." *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted); *see also Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) ("[A] plaintiff must present a colorable basis for jurisdiction, or some evidence constituting a lesser showing than a prima facie case." (quotations omitted)). It is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).

Here, Pinn argues that DMS has refused to produce evidence in response to discovery that "relates directly to DMS's involvement in the calls at issue in the SAC," including a complete Skype log between Sthay and the Vedanata employee who called Pinn and native format copies of emails between DMS and Vedanata. Mot. for Discovery 1. According to Pinn, this evidence bears on the facts that "Sthay is located in California, signed DMS's contract with Vedanata, and managed Vedanata's telemarketing from California." *Id*. The request is denied. As discussed above, the call from Vedanata to Pinn in Texas using a Texas phone number "does not amount to an intentional act expressly aimed at California," and the fact that a California-based employee of DMS's may have negotiated DMS's contract with Vedanata does not bear on that issue. Accordingly, Pinn's request to take additional discovery is denied.

### III. JOINT DISCOVERY LETTER

After the briefing on the motion to dismiss was complete, the parties filed a joint discovery letter regarding DMS's responses to a subpoena Pinn served prior to filing the SAC in which it named DMS as a defendant. [Docket No. 87.] Pinn challenges DMS's failure to produce electronic documents in native format and disputes the sufficiency of DMS's search for responsive documents, arguing in part that "Pinn critically needs this discovery to establish DMS's agency liability and defend against DMS's motion to dismiss for personal jurisdiction." *Id*. at 2. Given

14

the court's ruling, jurisdiction over DMS is no longer at issue. However, Pinn appears to contend that the discovery is also relevant to the merits of her claims against the remaining Defendants. Accordingly, the joint letter is denied without prejudice. The parties shall immediately meet and confer. If disputes remain after meeting and conferring, the parties shall file a joint letter that does not exceed five pages describing their disputes, including addressing the relevance and proportionality of Pinn's requests under Rule 26(b)(1). The letter may not incorporate any other filing by reference, and may not contain footnotes.

## IV.     CONCLUSION

For the foregoing reasons, DMS's motion to dismiss for lack of personal jurisdiction is granted. Pinn's request for jurisdictional discovery is denied. The parties' joint discovery letter is denied without prejudice.

**IT IS SO ORDERED.**

Dated: October 20, 2023



Donna M. Ryu
Chief Magistrate Judge