Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,
and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER CREDIT COUNSELING FOUNDATION, INC., NATIONAL BUDGET PLANNERS OF SOUTH FLORIDA, INC., Florida corporations, and ISHWINDER JUDGE, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | **PLAINTIFF KELLY PINN'S MOTION FOR SANCTIONS AGAINST DEFENDANTS**<br><br>No. 4:22-cv-04048-DMR<br><br>Judge Donna M. Ryu<br><br>Date:       September 12, 2024<br>Time:       1:00 p.m.<br>Location:  Courtroom 4 – 3rd Floor<br>                Oakland Courthouse,<br>                1301 Clay Street<br>                Oakland, California 94612 |

## TABLE OF CONTENTS

I.   SANCTIONS ARE WARRANTED ON THIS RECORD ............................................ 3

    A.   DEFENDANTS VIOLATED THE COURT'S 2023 AND 2024 ORDERS ........................... 4
    B.   DEFENDANTS EITHER IMPROPERLY WITHHELD OR SPOLIATED CALL RECORDS ...... 6
    C.   DEFENDANTS WITHHELD EMAILS WITH SHIV JAUHAR
          (SHIVJAUHAR@HOTMAIL.COM) ........................................................................... 8
    D.   OTHER INDICATIONS OF PROBLEMS WITH DEFENDANTS' PRODUCTION .................. 9

II.  THE COURT SHOULD REMEDY DEFENDANTS' OBSTRUCTION OF
    DISCOVERY ................................................................................................ 10

    A.   THE COURT SHOULD ORDER DISPOSITIVE SANCTIONS ...................................... 11
    B.   IN THE ALTERNATIVE, THE COURT SHOULD ORDER INDEPENDENT DOCUMENT
          COLLECTION AND PRODUCTION AT DEFENDANTS' COST ...................................... 13
    C.   PINN ASKS THE COURT TO IDENTIFY COMPENSABLE ATTORNEYS' FEES .............. 14

III. CONCLUSION ............................................................................................ 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*America Unites for Kids v. Rousseau,*
    985 F.3d 1075 (9th Cir. 2021) ............................................................................................... 11

*American Career College Inc. v. Medina,*
    673 F. Supp. 3d 1139 (C.D. Cal. 2023) ................................................................................. 13

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
    69 F.3d 337 (9th Cir. 1995) .................................................................................................. 12

*Barksdale School Portraits, LLC v. Williams,*
    339 F.R.D. 341 (D. Mass., 2021) .......................................................................................... 11

*Brotherhood Mut. Ins. Co. v. Vinkov,*
    No. 19-01821, 2021 WL 3553733 (C.D. Cal. Aug. 2, 2021)................................................ 13

*Claypole v. Cnty. of Monterey,*
    No. 14- 02730, 2016 WL 145557 (N.D. Cal. Jan. 12, 2016) ................................................. 4

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills,*
    482 F.3d 1091 (9th Cir. 2007) ......................................................................................... 2, 12

*Cyntegra, Inc. v. Idexx Labs., Inc.,*
    No. 06-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) ................................................ 7

*Fair Housing of Marin v. Combs,*
    285 F.3d 899 (9th Cir. 2002).................................................................................................. 4

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001)................................................................................................. 4

*Goodyear Tire & Rubber Co. v. Haeger,*
    581 U.S. 101 (2017).............................................................................................................. 14

*Hester v. Vision Airlines, Inc.,*
    687 F.3d 1162 (9th Cir. 2012) ........................................................................................12, 13

*Hyde & Drath v. Baker,*
    24 F.3d 1162 (9th Cir. 1994) ................................................................................................. 4

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC,*
    No. 13-01806, 2014 WL 1338480 (N.D. Cal. Apr. 1, 2014) ............................................... 13

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Keithley v. Homestore.com, Inc.*,
    629 F. Supp. 2d 972 (N.D. Cal. 2008) .......................................................... 7

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
    No. 12-05064, 2015 WL 9268118 (N.D. Cal. Dec. 21, 2015) ............................... 4

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006) ...................................................................... 12

*Lofton v. Verizon Wireless (VAW) LLC*,
    308 F.R.D. 276 (N.D. Cal. 2015) ................................................................. 13

*Milke v. City of Phoenix*,
    497 F.Supp.3d 442 (D. Ariz. 2020) .............................................................. 13

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ......................................................... 7

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997) .................................................................. 2, 12

*Poole v. Textron, Inc.*,
    192 F.R.D. 494 (D. Md. 2000) ................................................................... 14

*Redwood v. Dobson*,
    476 F.3d 462 (7th Cir. 2007) ..................................................................... 11

*Smith v. United States*,
    133 S. Ct. 714 (2013) ................................................................................ 8

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*,
    105 F.3d 521 (9th Cir. 1997) ..................................................................... 13

*In re Telescopes Antitrust Litig*,
    No. 20-03642, 2023 WL 4983178 (N.D. Cal. Aug. 2, 2023) ............................... 14

*United States v. Fleischman*,
    339 U.S. 349 (1950) .................................................................................. 7

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
    No. 05-1516, 2007 WL 2758571 (C.D. Cal. Sept. 18, 2007) ......................... 13, 14

**Other Authorities**

Fed. R. Civ. P. 26(g) ..................................................................................... 2

Fed. R. Civ. P. 30 ............................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ........................................................................... 10, 13

Fed. R. Civ. P. 30(d)..................................................................................................... 11

Fed. R. Civ. P. 30(d)(2) ......................................................................................... *passim*

Fed. R. Civ. P. 37 ..................................................................................................... *passim*

Fed. R. Civ. P. 37(b)(2) .................................................................................................. 6

Fed. R. Civ. P. 37(b)(2)(A) ..................................................................................... 3, 11

Fed. R. Civ. P. 37(b)(2)(C) .....................................................................................11, 14

Fed. R. Civ. P. 37(d) ..................................................................................................... 13

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT on September 12, 2024 at 1:00 p.m. in Courtroom 4, on the third floor of the Ronald V. Dellums United States Courthouse, 1301 Clay Street, Oakland, California 94612, before the Honorable Donna M. Ryu, Plaintiff Kelly Pinn ("Pinn") shall, and hereby does, move to sanction Defendants Consumer Credit Counseling Foundation, Inc. ("CCCF"), National Budget Planners of South Florida, Inc., and Ishwinder Judge (together, "Defendants") under Federal Rules of Civil Procedure 30 and 37 and the Court's inherent authority.

**Statement of Issues:** On July 13, 2023, the Court ordered Defendants to "file and serve a detailed, sworn declaration" about their efforts to collect and produce discovery. On May 29, 2024, the Court granted Pinn leave to take an extra deposition to "explore the deficiencies in the court-ordered declarations and the gaps in production described above to create a record regarding the CCCF Defendants' conduct in discovery and compliance with the court's previous orders on discovery." (ECF No. 114 at 3.) The Court's May 29 order also granted leave for Pinn to file "a duly noticed motion for sanctions" if Pinn concluded that discovery sanctions were "warranted, including an independent collection of evidence at Defendants' expense," after such deposition. (*Id.*) Pinn took Defendants' deposition on July 12, 2024.

Based on the record from that deposition, Pinn must conclude that sanctions are warranted. Defendants violated both the Court's 2023 and 2024 orders, without colorable excuse. As the 2024 order itself points out, Defendants never filed declarations that actually complied with the 2023 order. (*See* ECF No. 114 at 2 n.2.) The record from Defendants' July deposition indicates this is just one part of a pattern of concerted resistance to Pinn's discovery. The record reveals still more missing documents, including call records Digital Media Solutions, LLC ("DMS") communicated with Defendants via DMS's portal and call records Defendants shared with DMS via their Google spreadsheet, documents showing payments to the deponent's private, for-profit affiliate of CCCF (Faravahar, Inc.), and irreconcilable discrepancies between CCCF's payroll records and the employee incentive policies that Defendants have provided Pinn.

The prejudice from Defendants' discovery obstruction is sharp, because the looming

deadlines for class certification and trial make it unlikely that Pinn will have a fair opportunity to resolve this case on the merits as a certified class. Dispositive sanctions are proper where "discovery violations 'threaten to interfere with the rightful decision of the case'"—and "[b]elated compliance [] does not cure the prejudice" to other litigants. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (cleaned up). If Court finds the record does not suffice for dispositive sanctions at this time, then Pinn asks for an independent collection of evidence at Defendants' expense and attorneys' fees for time spent prying discovery from Defendants, under Rule 37 and the Court's inherent authority. Pinn reserves the right to seek additional relief depending on the outcome of the independent collection.

**Statement of Relevant Facts:** Defendants have repeatedly—and wrongly—claimed that their production was complete. On **May 18, 2023**, in their Second Amended Responses to Pinn's requests for production of documents ("RPDs"), Defendants certified under Rule 26(g) that they had "produced all non-privileged documents in their possession, custody, or control that are responsive to" various RPDs including their communications with Digital Media Solutions, LLC ("DMS"), and the telemarketer which called Plaintiff. (*Cf.* Preston Decl. ¶2.) Defendants' Rule 26(g) certification was false. On July 13, 2023, Pinn alerted Defendants that they had obtained email headers from Microsoft indicating Defendants' document production was not complete. (*Id*. ¶4.) Later that day, the Court entered an order requiring Defendants to file "a detailed, sworn declaration" concerning their collection of documents. (ECF No. 86 at 2.)

On July 20, 2023, Defendants made another production—including 176 emails with DMS, most (118) of which also included shivjauhar@hotmail.com. (*Cf.* Preston Decl. ¶5.) On **July 27, 2023**, Defendants confirmed ("for a third time") by email that their July 2023 production was "a complete production of all outstanding discovery[.]" (*Id*.) Defendants also filed declarations regarding their search for documents as required by the Court's July 2023 order. (*Cf.* ECF Nos. 88, 89.) On **August 23, 2023** (after prompting by Pinn), Defendants filed a supplemental declaration which stated "All responsive emails were retrieved and produced to Plaintiff." (ECF No. 94 ¶4.) Again, Defendants' statements regarding the completion of their

document production proved to be false.

On August 29, 2023, Pinn provided Defendants another, non-exhaustive list of 58 email headers for responsive emails with DMS which should have been produced (but were not). (Preston Decl. ¶7.) On September 25, 2023, after additional wrangling by Pinn, Defendants produced another 52 of these missing emails. (*Id*. ¶8.)

On September 27, 2023, Pinn and Defendants filed a joint discovery letter. (ECF No. 97.) Pinn subsequently withdrew that letter, eliminated duplicate headers, provided Defendants with a narrowed list of missing emails, and filed the parties' last joint discovery letter in March 2024. (Preston Decl. ¶12; ECF Nos. 105, 108.) In response to that letter, the Court entered its May 2024 order, requiring Defendants to sit for deposition. (ECF No. 114 at 3.) Pinn took that deposition on July 12, 2024. (*See* Tr.)

Four days prior to that deposition (on July 8), Defendants produced the remaining emails with DMS. (Preston Decl. ¶12.) The day before the deposition (on July 11), Defendants produced a document named "2024-07-11 DMS Call Records.xlsx"—which (despite the name) appears to just be a leads list, and does not contain any call dates, outgoing numbers, etc. (*Id*. ¶13.) A few hours before the deposition started Defendants produced a set of JSON files purporting to be an original copy of Defendants' Skype communications with other witnesses. (*Id*. ¶14.) These belated and deficient productions drive home the point that Pinn's persistent claims—that Defendants' production was incomplete—were valid and correct. (*See* ECF Nos. 97, 108.)

## I. Sanctions Are Warranted on This Record

Rule 37 authorizes the Court to grant relief for "fail[ure] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Rule 30 authorizes sanctions where a party "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The Court also "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct," or "conduct tantamount to bad faith," which includes "recklessness [] combined with an additional factor such as frivolousness, harassment, or an

improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Conversely, sanctions under Rule 30 and 37 do not require Pinn to show bad faith.[1]

"Discovery is hard enough" without intentional obstruction. *Claypole v. Cnty. of Monterey*, No. 14- 02730, 2016 WL 145557, *1 (N.D. Cal. Jan. 12, 2016). Litigants who make good faith mistakes in discovery are a fact of life. However, courts also have to account for bad faith litigants who feign mistake or even incompetence in order to obstruct discovery—hoping to achieve by delay what they cannot achieve on the merits. Self-executing discovery necessarily requires a certain presumption of good faith: in that context, it is easy to explain bad faith conduct away as a series of hapless, but good faith errors. One way to try to distinguish good faith and bad faith litigants is to demand transparency about the process which led to the discovery errors at issue. *That is exactly what the Court did here*. (ECF Nos. 86, 114.) Litigants who made discovery mistakes in good faith own up to their mistakes, because they have an incentive to demonstrate their *bona fides* and show that they have fully corrected those errors. Conversely, litigants undercut their own credibility by being evasive, misleading, or falsely denying discovery errors were committed in the face of accumulating evidence to the contrary.

As set forth above, Defendants falsely claimed that their production was complete in May, July, and August 2023. Defendants disproved those claims with its subsequent September 2023 production of 52 emails. (Preston Decl. ¶8.) Defendants might not admit it now, but their July 2024 productions also included new email. (*Id*. ¶12.) Each of these belated productions has shown that Defendants' preceding productions were incomplete. (*See* ECF Nos. 97, 108.)

A.     **Defendants Violated the Court's 2023 and 2024 Orders**

Defendants have not been transparent about the events that led the parties to this point. Indeed, they have not even provided that information they were ordered to provide in July 2023, to explain the discrepancies in their document production. (ECF No. 87 at 2.) Although the May

---

[1]     *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) ("We have not required a finding of bad faith [] before imposing sanctions under Rule 37"); *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-05064, 2015 WL 9268118, *3 (N.D. Cal. Dec. 21, 2015) ("Rule 30(d)(2) sanctions do not require a finding of bad faith"). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (citing *Hyde & Drath*, 24 F.3d at 1167).

2024 order expressly pointed these deficiencies out to Defendants, they **still** have not cured them:

> The declarations do not address when the declarants took steps to gather documents responsive to discovery requests; whose files were searched; what steps were taken to gather responsive materials; and how files are or were organized, stored, and maintained. In the supplemental declaration, Engineer discusses a July 2023 search for responsive emails but does not specify who conducted that search. He does not describe any other searches for responsive documents, including searches for non-email documents.

(ECF No. 114 at 2 n.2.) Whatever else, Defendants have known since the May 2024 order that their declarations were still deficient, and have done nothing to fix them. The Court ordered a deposition on Defendants'

> document and information systems, their search for and production of responsive documents and information in discovery, and whether spoliation of evidence has occurred [] to create a record regarding the CCCF Defendants' conduct in discovery and compliance with the court's previous orders on discovery.

(*Id.* at 3.) On this record, Pinn expected the deposition would cover questions about Defendants' contemporaneous claim that their July 2023 production was complete. (*Cf.* Preston Decl. ¶5.) Defendants' counsel claimed these questions were "stupid" and "unintelligent," instructed the deponent not to answer, and threatened to end the deposition. (Tr. 58:5- 61:9.)[2] When Pinn followed up to ask if Defendants' production was complete in July 2023, the deponent (perhaps taking cue from counsel's prolonged objection) answered "I have no idea. Well, how [] am I going to answer this question?" (*Id.* 61:7-62-3.)

Defendants cannot credibly dispute that their productions through July 2023 were incomplete, because their next production was 52 emails with DMS (that were not produced previously) in a zip file named "Missing Emails.zip," attached to an email with the subject line "Fw: Missing Emails," and which Defendants described as "the additional emails." (Preston Decl. ¶8.) If Defendants had candidly admitted their prior claims of completeness were mistaken, explained how those problems arose and were fixed, Pinn might have some hope for forward progress. That is not what happened here. At a minimum, the Court's 2023 and 2024 orders alerted Defendants to serious issues with their document production. (ECF Nos. 87, 114.)

---

[2]   (Tr. 58:5-8 ("I'm going to instruct him not to answer. That question's stupid, for lack of a better word. I mean, you can ask him cogent questions, or I may end the deposition"), 61:7-9 "Move on, [] [y]ou're not going to keep on asking the same unintelligent question").)

1    Defendants' July deposition was otherwise not "the fair examination of the deponent"

2    contemplated by the 2024 order. Fed. R. Civ. P. 30(d)(2). Defendants actively obstructed the

3    deposition, taking the position that the question of "whether or not new emails were produced in

4    July or September" 2023 was outside the deposition's scope. (Tr. 70:3-8; Preston Decl. ¶18

5    (deposition notice co-extensive with ECF No. 114).) Defendants also failed to prepare for the

6    deposition: the deponent (1) could not testify what CCCF had done to collect documents for this

7    case through May 2023, (2) did not know whether Defendants' May 2023 RPD responses were

8    "complete and correct at the time [they were] signed," and (3) did not recall when Defendants

9    stopped deletion of evidence. (*Id.* 32:1-16, 37:2-4, 52:12-15, 55:3-8.) Much of Defendants'

10   testimony is difficult to understand or parse in a way that squares with the record. Defendants

11   could not coherently explain "why [Pinn] didn't receive anything from [Defendants'] Skype

12   account" until the day of the deposition—ten months after Pinn asked for an exported Skype chat

13   log. (*Id.* 88:5-25 ("Everything was submitted" but that there may have been a "discrepancy" with

14   Defendants' counsel "forwarding" that production to Pinn).) When asked whether Defendants

15   had previously produced the four emails in their July 2024 production, Defendants claimed

16   "everything was produced," and that Defendants' counsel had possession of those emails. (*Id.*

17   91:12-19.) The deponent could not explain why Defendants did not search the email server

18   directly, but instead downloaded a set of emails to search first. (*Id.* 64:6-18.)

19   The Court ordered declarations in 2023 and a deposition in 2024. Because the deposition

20   was not a "fair examination of the deponent," it perforce violated the Court's 2024 order. Fed. R.

21   Civ. P. 30(d)(2), 37(b)(2). And the deposition would not have been needed in the first place if

22   Defendants had just complied with the Court's 2023 order, and provided transparency about their

23   document collection from the outset. Defendants have not complied with the Court's orders.

24   **B.    Defendants Either Improperly Withheld or Spoliated Call Records**

25   Defendants' testimony regarding its access to the DMS call records was not consistent or

26   candid.[3] Regardless, Defendants plainly had access to DMS's portal as of June 22, 2022 when

27   ─────────────────────────
     [3]    Defendants seemingly denied having any call records at all. (*See* Tr. 93:1-11 ("We never
28   made any calls [] so we wouldn't have that information").) Defendants also would not testify
     what terms like "avatar," "live transfer," "down sell," or "double verified" meant in the

they sent an email attaching call records from DMS. (*Id.* 77:1-11; Preston Decl. ¶10.)[4]

Defendants also had access to a Google spreadsheet containing call records that they shared with DMV in at least February 2022—in fact, *Defendants* owned at least one Google spreadsheet of call records. (Tr. 75:3-16; Preston Decl. ¶¶6, 9.) Pinn expects that if someone has access and genuinely looks hard enough, they can and will find a complete set of call records for Defendants' telemarketing campaigns (hence, Pinn's request for an independent inspection).

However, Defendants contend that they lost access to these call records (including a Google spreadsheet) after their relationship with DMS soured. (Tr. 75:11-12 (DMS had "taken everything away").) This chronology seems inconsistent with CCCF and DMS negotiating a new contract on "July 28, 2022, after the calls at issue in this case[.]" (Giardina Decl. ¶10, ECF No. 67.) In any event, Defendants plainly knew about Pinn's claims by April 13, 2022, because they tendered their defense to DMS after Pinn threatened suit. (Engineer Decl., ECF No. 73-1 ¶3, Exs. 1 and 2.) "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (collecting citations). Certainly Defendants had a duty to preserve call records after receiving Pinn's threat to litigate. *See Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 977 (N.D. Cal. 2008); *In re Napster*, 462 F.Supp.2d at 1068. And Defendants had "an affirmative duty to [] preserve" call records and other documents stored on Google and DMS's servers. *Cf. Cyntegra, Inc. v. Idexx Labs., Inc.*, No. 06-4170, 2007 WL 5193736, *5 (C.D. Cal. Sept. 21, 2007). So if Defendants truly lost access to their DMS or Google call records, then that is spoliation and should be sanctioned.

Again, Defendants did not comply with either the 2023 or 2024 orders, and should not be given the benefit of the doubt on this record. (*Cf.* ECF Nos. 87, 114 *with United States v. Fleischman*, 339 U.S. 349 (1950) ("circumstances of this case fairly bring into play the familiar

---

[4]  deponent's own emails regarding the DMS telemarketing campaign—suggesting these terms were invented and only understood by DMS. (*Id.* 73:15-25; 76:10-25.) Defendants admit the DMS portal exists and that they had access to it at other points in the record. (*Id.* 40:19-25; 41:8-21; 71:8-17, 78:11-25, Ex. 16, 22.) Defendants also conceded that the Excel file named "2024-07-11 DMS Call Records.xlsx" produced the day before the deposition was not a substitute for those call records. (*Id.* 92:22-23 ("I wouldn't [] call them 'call records'"); Preston Decl. ¶13.)

doctrine [] that it is not incumbent [] to adduce positive evidence to support [an] averment the truth [] which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of [] evidence probably within the defendant's [] control").[5]

**C.    Defendants Withheld Emails with Shiv Jauhar (shivjauhar@hotmail.com)**

As the May 2024 order indicates, "it appears that there are at least 80 [outstanding] emails between the CCCF Defendants and a telemarketer using the shivjauhar@hotmail.com address that have not been produced." (ECF No. 114 at 2; Preston Decl. ¶¶15-16.)[6] Defendants' discovery letters indicate Shiv Jauhar (who used the email address shivjauhar@hotmail.com) was the telemarketer which called Pinn, and Defendants testified they searched for their email with Jauhar.[7] RPD 3 covers

> all documents concerning communications between Defendants and Digital Media Solutions, LLC ["DMS"], any other telemarketer which called Plaintiff and/or [her telephone number] during the class period, and/or any telemarketer using the name "Credit Associates."

(Preston Decl. ¶2.) Defendants' May 2023 discovery responses state "Defendants have produced all non-privileged documents in their possession, custody, or control that are responsive to this Request." (*Id.*) To date, Defendants' production only includes email which involves DMS—most of which also involves Jauhar. (*Id.* ¶5.) That is, Defendants still have not produced their email with shivjauhar@hotmail.com *without* DMS. (*Id.* ¶16.)

However, Pinn learned (for the first time at the deposition) that Defendants may claim that Jauhar was *not* CCCF's telemarketer, although this was not clearly stated and conflicted with other testimony. (Tr. 45:18-21.)[8] But if the deponent testified that Jahuar is not Defendants' telemarketer, then he also testified that *he does not know what telemarketing is* and that Jauhar

---

[5]    "Where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof." *Smith v. United States*, 133 S. Ct. 714, 720 (2013) (citation, punctuation omitted).

[6]    Indeed, the 2024 order suggests the Court also understood Shiv Jauhar to be Defendants' telemarketer. (*See* ECF No. 114 at 2.)

[7]    (*Cf.* ECF No. 97 at 5; ECF No. 108 at 4 ("Defendants have searched [] communications with the 'telemarketer[s] which called Plaintiff' (like emails with shivjauhar@hotmail.com)") *with* Tr. 65:2-4 (Q Did you "search for Shiv Johar? A I don't recall at that point. At — at that time, I did").)

[8]    (Tr. 45:16-21 ("Q What did Mr. Johar do for CCCF? A Nothing. He had nothing to do with CCCF. [Q Did Jauhar] arrange telemarketing [calls for CCCF?] A He — no. He only worked with DMS, and DMS is the one that did that").)

"*had nothing to do with CCCF*."[9] These denials are undercut by the rest of the record: Jauhar is involved in the vast majority of extant emails with DMS, and reflect that Jauhar played a direct role in managing DMS's telemarketing for Defendants (for instance, seeking "access to [telemarketing] recordings" and responding to prank calls). (Preston Decl. ¶¶11, 15.) Moreover, Defendants *also* testified Jauhar "was from DMS." (Tr. 44:25.) Hence, either Jauhar was part of DMS or he was Defendants' telemarketer: either way, the outstanding emails with Jauhar are responsive to RPD 3 and should have been produced.

### D.    Other Indications of Problems with Defendants' Production

**Identifying Potential Custodians:** The deposition also revealed other indicia that Defendants' document collection and production has been problematic. Defendants' prior productions did not identify all of their employees. (Tr. 75:22-25, 96:8-10, 23-25; Preston Decl. ¶17 (organization charts supposedly "a complete list of all CCCF's employees" but omitted various part-time employees).)

**Skype Chat Logs:** This casts doubts on whether Defendants' collection of Skype chat logs was complete: Defendants testified both that "no CCCF employees have Skype accounts," and that Defendants had produced "all of those Skype accounts." (Tr. 90:20-24. *Cf. id.* 88:5-25.) Defendants' testimony about their Skype production fails to explain why Defendants waited ten months to produce their Skype logs—and Defendants have not produced the .tar file native format output of Skype's chat log export function that they promised. (*Id.* 87:1-13, 88:5-91: 19; Preston Decl. ¶14.)

**Faravahar Documents:** Pinn's RPD 17 covered "documents concerning any payment" CCCF made to "any employee[,] affiliate, subsidiary, parent, or related corporation, [] or other entity related to CCCF, including by way of example communications concerning [or] financial records evidencing such payment." (Preston Decl. ¶3.) Pinn has not had a basis to challenge Defendants' response that they did "not have any non-privileged documents in their possession,

---

[9]    (*Id.* 20:8-9 ("Q Does that include telemarketing? A 'Telemark'? What is telemarketing?"); 45:16-17 (Q "What did Mr. Johar do for CCCF? A Nothing. He had nothing to do with CCCF"); 74:24-75:2 ("Q Is a live call somebody where there's a live telemarketer on the line? I don't know when he keeps saying 'telemarketer.' A Who is a telemarketer?").)

custody, or control that are responsive to this Request" until Defendants' deposition. (*Id.*) At deposition, the deponent indicated that he owned Faravahar, Inc. ("it's me, my company"), which has "done work for" CCCF under a consulting "contract [that is] operative today," but he did not know if Faravahar received income under that contract. (Tr. 99:14-100:24 ("I don't know. I'll have to look at that. I don't — I haven't done that, so — but it's just — I'll have to look at it").) Faravahar is a for-profit California corporation. Documentation on CCCF's relationship with Faravahar is responsive to RPD 17 and highly relevant to Defendants' non-profit defense, but obviously Defendants have not produced any such documents.

**Payroll/Compensation Policy Discrepancies:** Defendants' bonus policies cannot be reconciled with the amounts listed in the payroll records, and the deponent could not explain how these bonuses were calculated. (*Cf.* Tr. 106:12-108:15.) Again, these discrepancies are highly relevant to Defendants' non-profit defense, but Defendants have simply given Pinn a series of single-page compensation policies that are inconsistent with each other. (*Cf.* ECF No. 97 ("commission and bonus payments in [the] payroll records reflect payments that are inconsistent with what Defendants [] payroll records [] reflect payments in amounts ending in $5, but [compensation] policy [] does not provide for any such payments").)

**CreditSoft:** As the 2024 order notes, Defendants "have refused to produce entries in the CreditSoft CRM database in excel or csv format, and instead have produced a pdf file depicting only one database entry," and "deny their ability to [] produce CreditSoft CRM database information in excel or csv format but offer no explanation." (ECF No. 114 at 3.) This situation has not been resolved. In the deposition, Defendants would not even admit that the pdf copy of Pinn's CRM entry (CCCF 0002) cut off the complete entry. (Tr. 81:1-82:4.)

## II.     The Court Should Remedy Defendants' Obstruction of Discovery

The Court has broad authority and discretion to fashion remedies for Defendants' conduct here. As the 2024 order required a Rule 30(b)(6) deposition, Defendants failure to permit "the fair examination of the deponent" violated both the Court's order and Rule 30. Fed. R. Civ. P. 30(d)(2). Rule 37 authorizes evidentiary sanctions, striking pleadings, entering a default judgment, the common law remedies for contempt, as well as monetary sanctions like attorneys'

1   fees, for failing "to obey an order to provide [] discovery." Fed. R. Civ. P. 37(b)(2)(A), (C). Rule

2   30 also broadly authorizes "appropriate sanction[s]—including the reasonable expenses and

3   attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair

4   examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 30(d) typically implicates monetary

5   sanctions, is not limited to monetary sanctions.[10] The Court's inherent authority extends to

6   "among other things, dismiss[ing] a case in its entirety, bar[ring] witnesses, exclud[ing] other

7   evidence, award[ing] attorneys' fees, or assess[ing] fines." *America Unites for Kids v. Rousseau*,

8   985 F.3d 1075, 1088 (9th Cir. 2021).

9           **A.      The Court Should Order Dispositive Sanctions**

10          Pinn sought relief regarding gaps in Defendants' discovery in May 2023, September

11  2023, and March 2024. (*See* ECF Nos. 64, 97, 108.) Defendants have dribbled out discovery as

12  slowly as they could for at least fifteen months. Pinn has been prejudiced by Defendants'

13  prolonged refusal to provide even basic class discovery, which has stymied class certification—

14  and profited Defendants. This strategy has served them well—Pinn had to move to continue the

15  Court's first class certification deadline, and she now faces a new deadline on November 2024,

16  while the existing trial deadlines in 2025 stand. (ECF Nos. 109, 114, 120.) Below, Pinn moves

17  for a forensic inspection, but this motion will not be heard until September 12: Pinn will need to

18  move for class certification just four weeks later (November 10). Pinn is realistic about the

19  chances that an independently collection will be successfully completed in four weeks. So even

20  if there was an independent collection, Defendants could still effectively prevail through

21  obstruction and delay. Meanwhile, Pinn's forcible occupation with class discovery has meant she

22  has lost critical time on discovery on Defendants' non-profit affirmative defenses which Pinn

23  needs to defeat at trial.

24          It is plain the Court will not continue the case's deadlines, and why should it? Other

25  litigants have valid claims to the Court's limited time, too. The Court needs to consider "the

26  public's interest in expeditious resolution of litigation" and the Court's own "ability to efficiently

---

27  [10]   *See Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007) (Rule 30(d) sanctions "need not

28         be monetary"); *Barksdale School Portraits, LLC v. Williams*, 339 F.R.D. 341, 344, 346 (D.
           Mass., 2021) (disqualifying counsel who "surreptitiously provide[d]" answers in deposition).

manage its docket in a manner fair to all parties with pending cases." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169, 1170 (9th Cir. 2012). Pinn has been stuck in essentially the same place since May 2023, and Defendants have only made grudging progress on discovery in the face of two direct judicial interventions. (ECF Nos. 64. 87, 114.) And that is the point: the Court has intervened twice already, and things have not improved. Even if the Court is inclined to intervene again and grant the extraordinary remedy of an independent collection, what are the chances that Defendants will permit a successful collection? On this record, what are the chances that an independent collection will make it possible for the Court "to be confident that [Pinn has] access to the true facts[?]" *Connecticut General*, 482 F.3d at 1097 (cleaned up).

In sum, this record supports dispositive sanctions. Case-dispositive sanctions do not require Pinn to show the withheld documents "would have changed the outcome of" class certification or trial; it is enough that "concealment of the documents clearly [] *threatened* to interfere with the rightful decision of the case." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995) (italics in original).[11] And the question is not whether Pinn "eventually obtain[s] the information" she needs, either. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997). Defendants have "threatened to distort the resolution of the case." including both liability and class certification, by withholding (or losing) documents with "obvious relevance [] to the litigation." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 960 (9th Cir. 2006). These delays *already* severely prejudiced Pinn's "ability [] to prepare [her] case for trial" and class certification. *Payne*, 121 F.3d at 508. So even if Defendants produced call records and other class discovery tomorrow, Pinn would still have been "deprived of any meaningful opportunity to follow up on that information, or to incorporate it into [her] litigation strategy" in advance of class certification. *Id*. "Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Id*.

This record leaves "no reason to believe" that Defendants would "begin to adhere to

---

[11]   "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." *Connecticut General*, 482 F.3d at 1097.

[their discovery] obligations" if the Court simply gave them more opportunities to comply with discovery: continuing the case's existing deadlines "would merely give [Defendants] what [they] desire[]—further delay—and [] simply validate [their] misconduct." *Hester*, 687 F.3d at 1170-71. As the 2024 order required a Rule 30(b)(6) deposition, Defendants failure to permit "the fair examination of the deponent" violated both the Court's order and Rule 30. Fed. R. Civ. P. 30(d)(2). Under Rule 37 and the Court's inherent authority, this is adequate grounds to bring this case to a close.[12] Neither Pinn nor the other litigants on the Court's docket should have to wait for Defendants to reject every conceivable opportunity to participate in discovery in good faith before the Court pulls the plug. Default judgment is an appropriate remedy when a party withholds and delays class discovery until it disrupts the Court's class certification schedule. *Id.* at 1166, 1169-71. It is "appropriate to reject lesser sanctions where [the Court] anticipates continued deceptive misconduct." *Id.* at 1170 (cleaned up). *Cf. Milke v. City of Phoenix*, 497 F.Supp.3d 442, 474 (D. Ariz. 2020) ("litigant is not entitled to engage in a years-long pattern of bad faith obstruction of full and fair discovery").

**B.      In the Alternative, the Court Should Order Independent Document Collection and Production at Defendants' Cost**

The Court's order identifies "an independent collection of evidence at Defendants' expense" as a potential remedy on this order. On this record, there is "a serious question as to whether Defendants have produced all responsive documents." *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, No. 13-01806, 2014 WL 1338480, *9 (N.D. Cal. Apr. 1, 2014) (ordering independent collection). *Cf. Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. 05-1516, 2007 WL 2758571, *10 (C.D. Cal. Sept. 18, 2007) (defendants made "repeated and unequivocal certifications that [they] fully complied with the Court's discovery orders [that were] seriously

---

[12] Sanctions under Rule 37(d) and the Court's inherent authority are available where a deponent "falsely testified," there is "obstructive and evasive conduct at [the] deposition," or "the failure to produce an adequately prepared witness [under] Rule 30(b)(6) is tantamount to a failure to appear." *American Career College Inc. v. Medina*, 673 F. Supp. 3d 1139, 1149 (C.D. Cal. 2023); *Brotherhood Mut. Ins. Co. v. Vinkov*, No. 19-01821, 2021 WL 3553733, *6 (C.D. Cal. Aug. 2, 2021); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015) (cleaned up, citations omitted). Together with a violation of a prior court order, "willful violation of [] order to submit to deposition" is a sufficient basis for a default judgment sanction. *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).

misleading and obfuscatory"). There is no reason for "any confidence that once again ordering [Defendants] to conduct a good faith search for electronic documents will be any more effective than it has in the past." *Id*. at \*17.

> For the discovery system to function properly, the costs of resisting discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered. It is not enough that an offender belatedly comply with its discovery obligations; "[i]f the only sanction for failing to comply with the discovery rules is having to comply with the discovery rules if you are caught, the diligent are punished and the less than diligent, rewarded." *Poole v. Textron, Inc.*, 192 F.R.D. 494, 506 (D. Md. 2000).

*Id*. at \*16. The Court should appoint an independent officer of the Court to execute collection of documents from Defendants. To curb any incentive to prolong or frustrate this collection, the Court should require Defendants to pay the cost of the collection.

### C.    Pinn Asks the Court to Identify Compensable Attorneys' Fees

All or most of Pinn's work on this case since May 2023 was aimed at extracting valid and complete discovery from CCCF (naturally excluding Pinn's litigation with DMS). *Cf. Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017) (fee award under courts' inherent authority limited to "fees that, except for the misbehavior, would not have accrued").[13] The Court may have a different view of what time is compensable. Pinn asks the Court to identify the parameters for compensable time and expenses, and grant Pinn leave to file a noticed motion for attorneys' fees and costs.

## III.   Conclusion

The Court has given Defendants two opportunities to address Pinn's objections to its discovery practice, and Defendants have not complied. Defendants' declarations do not comply with the Court's 2023 order, and Defendants did not permit a fair examination of their deponent in response to the 2024 order. (ECF No. 114 at 2 n.2, 3.) The record of discovery disputes that led to this point and the warnings the Court provided Defendants previously are enough to close the case or at least compel independent collection, and award fees.

---

[13] *Haegar*'s reasoning extends to "fees awarded pursuant to Rule 37(b)(2)(C)" (and presumably Rule 30 as well). *In re Telescopes Antitrust Litig,*, No. 20-03642, 2023 WL 4983178, \*2 (N.D. Cal. Aug. 2, 2023) , there must be a causal connection between a litigant's misconduct and the fees incurred by the opposing party").

1

2 **NOTICE OF LODGING PROPOSED ORDER**

3       Plaintiff Kelly Pinn lodged with the Court the attached order by emailing a Microsoft

4 Word version of the order below to "DMRpo@cand.uscourts.gov." *See*

5 https://cand.uscourts.gov/judges/ryu-donna-m-dmr/.

6 Dated: August 7, 2024             By:    s/Ethan Preston

7                               Ethan Preston (263295)
                              ep@eplaw.us

8                               PRESTON LAW OFFICES
                              4054 McKinney Avenue, Suite 310

9                               Dallas, Texas 75204
                              Telephone: (972) 564-8340

10                               Facsimile: (866) 509-1197

11                               *Attorneys for Plaintiff Kelly Pinn, on her*
                              *own behalf, and behalf of all others*

12                               *similarly situated*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28